111 F.3d 1447
 45 ERC 1126, 27 Envtl. L. Rep. 21,141,
97 Cal. Daily Op. Serv. 2847,
97 Daily Journal D.A.R. 5029
 MARBLED MURRELET, (Brachyramphus marmoratus); Northern
Spotted Owl, (Strix Occidentalis Caurina);
Environmental Protection Information
Center, Plaintiffs-Appellees,
v.
Bruce BABBITT, Secretary, U.S. Department of Interior, Defendant,
and
Pacific Lumber Company, a Delaware Corporation; Scotia
Pacific Holding Company, a Delaware Corporation;
Salmon Creek Corporation, a Delaware
Corporation, Defendants-Appellants.
 No. 96-15617.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Nov. 4, 1996.
Decided April 18, 1997.
 
 Jared G. Carter and Frank Shaw Bacik, Rawles, Hinkle, Carter, Behnke & Oglesby, Ukiah, California, for defendants-appellants.
 Thomas N. Lippe, Law Offices of Thomas N. Lippe, San Francisco, California, for plaintiffs-appellees.
 Appeal from the United States District Court for the Northern District of California, Louis Charles Bechtle, District Judge, Presiding. D.C. No. CV-95-03261-LCB.
 Before: NORRIS, KOZINSKI and TASHIMA, Circuit Judges
 WILLIAM A. NORRIS, Circuit Judge:
 
 
 1
 In an action filed on behalf of the marbled murrelet and the northern spotted owl under the Endangered Species Act ("ESA") and under the National Environmental Policy Act ("NEPA"), Appellee Environmental Protection Information Center ("EPIC") secured a preliminary injunction enjoining Appellants from conducting logging activities in Humboldt County, California pursuant to eight Timber Harvest Plans ("THPs").
 
 
 2
 The district court granted EPIC's motion for the preliminary injunction because in its view, EPIC had demonstrated (1) the existence of serious questions on the merits as to whether ESA and NEPA had been violated, and (2) a balance of hardships tipping in its favor. Memorandum and Order, filed Apr. 9, 1996, at 39. Because we believe EPIC has failed to demonstrate the existence of serious questions on the merits as to whether ESA and NEPA have been violated, we VACATE the preliminary injunction.
 
 
 3
 Before addressing the merits of the preliminary injunction, we turn briefly to the question whether the district court properly exercised jurisdiction over EPIC's ESA claim.
 
 
 4
 Appellants argue that the district court lacked subject matter jurisdiction over EPIC's ESA claim because EPIC failed to give sixty days notice of intent to sue under § 7 of ESA, as required by § 11(g) of that Act. See 16 U.S.C. § 1540(g)(2)(A)(i). EPIC responds that the requisite sixty day notice of intent to sue was contained in EPIC's March 21, 1995 and April 3, 1995 letters to Appellants, the United States Fish and Wildlife Service ("FWS") and the California Department of Forestry and Fire Protection ("CDF").
 
 
 5
 Because we rule in favor of Appellants on the merits, we need not resolve the fact-specific question whether EPIC's letters gave the required notice of intent to sue.
 
 
 6
 On the merits, we disagree with the district court that EPIC has raised serious questions as to whether FWS engaged in "agency action," as defined in § 7(a)(2) of ESA. Specifically, we disagree with the district court that the FWS concurrence letters were "tantamount to an approval of [Appellants'] THPs under § 919.9(e)." Memorandum and Order, filed Apr. 9, 1996, at 23. Our review of this finding requires a brief review of the statutory landscape.
 
 
 7
 In California, THPs must be approved by CDF. Cal. Pub. Res.Code § 4581. To obtain CDF approval of a THP, plan submitters must proceed in accordance with one of seven alternative procedures for providing information to the Director of CDF. Cal.Code Regs. tit. 14, § 919.9. The information is used by the Director to evaluate whether or not the proposed activity would result in the "take"[1] of an individual northern spotted owl. Id.
 
 
 8
 The FWS concurrence letters are at issue because Appellants chose to proceed under § 919.9(e), an option which allows CDF, in making its evaluation, to consider an opinion by FWS that the planned timber operations will not likely result in a take of the owl. See Cal.Code Regs. tit. 14, § 919.9(e).[2] The concurrence letters were two such opinions.
 
 
 9
 EPIC argues that the district court was correct that there was a serious question as to whether, in issuing the concurrence letters, FWS engaged in agency action. In its view, CDF delegated its authority to protect endangered species to FWS in Rule 919.9(e), and FWS, in issuing the concurrence letters, accepted that delegation. Appellees' Br. at 19. Thus, according to EPIC, by approving Appellants' Northern Spotted Owl Plan, FWS "enabled [Appellants] to obtain the approval of its THPs by CDF. In essence, [FWS] granted [Appellants] a subsidiary permit necessary for [Appellants] to obtain a permit from CDF." Id.
 
 
 10
 Appellants argue that as a matter of state law, approval of and control over any particular THP rests exclusively with the Director of CDF. See Cal. Pub. Res.Code § 4582.7(e) (providing that the director "shall have the final authority to determine whether a[THP] is in conformance with the [applicable] rules and regulations"); Sierra Club v. State Board of Forestry, 7 Cal.4th 1215, 1220, 32 Cal.Rptr.2d 19, 876 P.2d 505 (1994) (noting that "the [California Board of Forestry] has the ultimate power of approval over a[THP]"). In their view, the state law requirement in § 919.9(e) that Appellants consult with and obtain advice from FWS does not convert that consultation and advice into some kind of "de facto" approval process. Appellants' Br. at 34. The concurrence letters, they argue, "merely set forth FWS' views on how to avoid a violation of [ESA] section 9." Id. at 36.[3]
 
 
 11
 In Marbled Murrelet v. Babbitt, 83 F.3d 1068, 1074 (9th Cir.1996) ("Murrelet I" ), we decided that the factual evidence presented by EPIC in support of its claim that FWS engaged in "agency action" by providing advice on how the lumber companies could avoid a "take" under § 9 of ESA was insufficient to support the issuance of a preliminary injunction because "nothing in the letter [at issue] justifie[d] an inference that [FWS] has the authority to enforce California's laws or regulations." We said that when an agency lacks the discretion to influence private action, there is no "agency action." Id.
 
 
 12
 In this case, CDF, not FWS, has the discretion to influence the private action at issue. See Cal. Pub. Res.Code § 4582.7(e); Sierra Club v. State Board of Forestry, 7 Cal.4th 1215, 1220, 32 Cal.Rptr.2d 19, 876 P.2d 505 (1994). As FWS stated in its November 20, 1992 concurrence letter, "our concurrence with [Appellants'] Plan does not constitute 'approval' of individual THPs.... [F]inal determinations regarding satisfaction of [section 919.9(e) ] ... remain with the Board and the CDF." Thus, in this case, as in Murrelet I, there is no agency action.
 
 
 13
 Implicit in this decision is our rejection of EPIC's argument that the State of California can somehow "delegate" its authority to influence private action to the federal government. Submission of a letter stating that the proposed management prescription is acceptable to FWS does satisfy Rule 919.9(e)--one of the seven options for providing information to CDF so that the Director of CDF can evaluate whether or not the proposed activity will result in a "take." However, it does so as a matter of state law. While the State of California may choose to credit FWS' opinion on the question whether proposed timber operations will likely result in a take of protected species, it may not, in so doing, force "agency action" onto the federal government.[4]
 
 
 14
 In sum, there is no evidence of federal discretionary involvement or control over Appellants' THPs. As a result, there is no serious question whether FWS engaged in "agency action" under § 7 of ESA.
 
 
 15
 Because we disagree with the district court's decision that EPIC raised serious questions as to whether FWS engaged in "agency action" under ESA, we necessarily also disagree with the district court's decision that EPIC raised serious questions as to whether FWS engaged in "major federal action" under NEPA. As we said in Murrelet I, "[i]f there is any difference [between 'agency action' and 'major federal action'], case law indicates 'major federal action' is the more exclusive standard." Murrelet I, 83 F.3d at 1074 (citing Sierra Club v. Babbitt, 65 F.3d 1502, 1512 (9th Cir.1995)).
 
 
 16
 The preliminary injunction is VACATED.
 
 
 
 [1]
 A "take" occurs when a party "harass[es], harm[s], pursue[s], hunt[s], shoot[s], wound[s], kill[s], trap[s], capture[s], or collect[s], or ... attempt[s] to engage in any such conduct." 16 U.S.C. § 1532(19)
 
 
 [2]
 Option (e) provides: "If the plan submitter proposes to proceed pursuant to the outcome of a discussion of the proposed THP between the plan submitter and [FWS], the plan submitter shall submit written documentation in the form of a letter ... [stating] that the described or proposed management prescription is acceptable to [FWS]." Cal.Code Regs. tit. 14, § 919.9(e)
 
 
 [3]
 Section 9 of ESA provides that it is unlawful to "take" any endangered species of fish or wildlife within the United States or the territorial sea of the United States. 16 U.S.C. § 1538(a)(1)(B)
 
 
 [4]
 EPIC's reliance on Ramsey v. Kantor, 96 F.3d 434, 443 (9th Cir.1996) ("if a federal permit is a prerequisite for a project with adverse impact on the environment, issuance of that permit does constitute major federal action"), is misplaced. Obtaining an FWS concurrence is not a prerequisite to gaining CDF approval of a THP; it is merely one of seven ways to gain CDF approval