**CARSON–TRUCKEE WATER CONSERVANCY DISTRICT, et al., Plaintiffs,**

**v.**

**James G. WATT, Secretary of the Interior, et al., Defendants,**

**and**

**Pyramid Lake Paiute Tribe of Indians, Defendant-Intervenor.**

**Civ. No. R–76–152 CJS.**

United States District Court, D. Nevada.

Sept. 29, 1983.

See also D.C., 549 F.Supp. 704, D.C., 537 F.Supp. 106.

John M. Collette, Andrew J. Ogilvie, Collette & Erickson, San Francisco, Cal., for plaintiffs Carson-Truckee Water Conservancy Dist. and Sierra Pacific Power Co.

John Madariaga, Susan L. Oldham, Sierra Pacific Power Company, Reno, Nev., for Plaintiff Sierra Pacific Power Co.

Richard H. Bryan, Atty. Gen., Larry D. Struve, Chief Deputy Atty. Gen., Harry W. Swainston, Deputy Atty. Gen., Carson City, Nev., Harold A. Swafford, John W. Hoffman, Mathew Feiertag, Bowen, Swafford & Hoffman, Reno, Nev., for plaintiff State of Nev.

Lamond R. Mills, U.S. Atty., Shirley A. Smith, Asst. U.S. Atty., Reno, Nev., Rembert A. Gaddy, Dale T. White, Dept. of Justice, Land & Natural Resources Div., Brenda Washington, U.S. Dept. of Interior, Washington, D.C., for defendant James Watt and U.S. Agencies and Officers.

Robert S. Pelcyger, Fredericks & Pelcyger, Boulder, Colo., Michael Thorp, Eisenhower, Carlson, Newlands, Reha, Henriot & Quinn, Tacoma, Wash., E. Pierre Gezelin, Reno, Nev., for defendant-intervenor Pyramid Lake Paiute Tribe of Indians.

SOLOMON, District Judge:

On December 22, 1982, I granted the motion of defendant-intervenor, Pyramid Lake Paiute Tribe of Indians (Tribe), for costs, expert witness fees, and attorney fees limited to the issues under the Endangered Species Act (ESA).

Thereafter, the Tribe filed an application for fees in which it sought $545,292 in attorney fees and costs.

During my examination of the exhibits and briefs submitted in support of and in opposition to the requested award, I became concerned that an award of attorney fees, particularly of the size requested, was inappropriate under the facts of this case. I therefore requested argument on the propriety of my order granting fees, and also on the issue of the amount of such fees if any were to be allowed.

On the basis of the oral arguments, written brief and my reexamination of the record, including briefs on attorney fees, I have concluded that an award of attorney fees to the Tribe in any amount would be inappropriate.

Plaintiffs Carson-Truckee Water Conservancy District, Sierra Pacific Power Company and the State of Nevada, filed this action in which they seek to appropriate water from the Lower Truckee River for municipal and industrial (M & I) purposes. They contend that the Secretary of the Interior (Secretary) and other federal defendants, by failing to obtain reimbursement for the costs of constructing Stampede Dam and Reservoir (Stampede), violated the Washoe Project Act and related reclamation laws.

The Government or the Tribe or both over a period of many years have filed a number of cases to obtain additional water for the Tribe. Some of these cases were decided against the Government and the Tribe, and others are still pending. One of these cases was recently decided by the Supreme Court of the United States. *Nevada v. United States,* —— U.S. ——, 103 S.Ct. 2906, 77 L.Ed.2d 509 (1983). There, the district court rejected the demand of the Government for reserve water rights for the Tribe for fishery purposes. The Court of Appeals partly reversed that decision. Later, the Court of Appeals' decision was reversed by the Supreme Court which held that res judicata prevents the United States and the Tribe from litigating their claims.

The Government in its answer to plaintiffs' complaint in this case, raised many issues as defenses including the defense of the ESA.

The Tribe filed a motion to intervene in this case asserting that it "has an interest in the subject matter of the action as the beneficial or equitable owner of the rights to the use of the waters of the Truckee River including those stored in Stampede Reservoir ...." The motion was granted. Thereafter, the Tribe made a number of legal contentions. First, the Tribe contended that the Government had trust obligations which made it improper to compel the Secretary to sell water which was subject to the reserve water rights claimed by the Government and the Tribe in *Nevada v. United States, supra.* Second, the Government cannot be compelled to sell water necessary to enable the Tribe to take advantage of Pyramid Lake fishery and to become economically self-sufficient. Third, the Secretary cannot be compelled to violate the existing court order in *Pyramid Lake Paiute Tribe of Indians v. Morton.* The Tribe also raised the defense of ESA.

In addition to these substantive defenses, the Tribe raised a number of technical defenses. They are:

(1) Do plaintiffs have standing to challenge the Secretary's action?

(2) Do the plaintiffs have a private right of action under the reclamation laws?

(3) Is the government required to obtain a reimbursement contract? If so, can reimbursement be achieved through a contract to supply M & I water to the District?

These technical defenses were the basis for my opinion reported at 537 F.Supp. 106. My opinion discussed the technical issues raised by the Government and the Tribe and concluded with the following statement:

I hold that the plaintiffs have standing to maintain this action, and that they have a private right of action under the Administrative Procedure Act to enforce the Secretary's reimbursement obligation. The Secretary is required to sell all of Stampede's water except that which is necessary to fulfill his trust obligations to the Tribe and to protect the endangered species which spawn in the Lower Truckee River.

In that opinion, I also denied the claim of the State of Nevada that "the Secretary needs a permit from the State of Nevada for Stampede's present operations."

I reserved decision on the amount of water the Secretary must provide (1) to satisfy his obligations under the ESA to conserve the endangered and threatened species of Pyramid Lake, and (2) to satisfy his trust obligations to preserve the Pyramid Lake fishery for the benefit of the Tribe.

All parties agreed that the Secretary has obligations under the ESA and under his trust obligations to the Tribe which take precedence over his obligations to store water for M & I uses. The only issue was the amount of water necessary to fulfill those obligations.

The evidence at the trial consisted primarily of the testimony of experts presented in written statements and exhibits submitted by all of the parties, particularly the plaintiffs and the Tribe. I found that there was substantial evidence to support the Secretary's plan for operating Stampede, to restore the qui-ui to a non-endangered status, and to restore the Lahontan cutthroat trout to the point where it is no longer a threatened species.

I did not determine the amount of water necessary to satisfy the Tribe's fishery rights because the Supreme Court had not yet determined those rights in *Nevada v. United States*. I held it was not necessary to make that determination because all of that water will be necessary for many years to come for the qui-ui and the Lahontan cutthroat trout in order to remove them from their threatened or endangered status.

On the basis of my decision, the Tribe requested attorney fees not only from the plaintiffs but also from the Government. This application was made under the provisions of the Endangered Species Act, 16 U.S.C. § 1531 *et seq.*, particularly section 1540(g)(4) which permits an award of attorney fees whenever the court determines such an award is appropriate. This is the only statute under which the Tribe can obtain attorney fees.

■ The Tribe participated in this action primarily for its own benefit; that is, to obtain water rights, to establish a fishery, and to require the Government to furnish it water in compliance with the Government's trust obligations. Nevertheless, the self-interests of the Tribe would not bar it from obtaining an award of attorney fees. But to obtain such an award, I believe it is imperative that the Tribe show that the litigation involved important, complex or novel issues, that the case aided in interpreting the Act, and that the Tribe's efforts substantially contributed to the goals of the ESA. "[T]he dominant consideration is whether litigation by that party has served the public interest by assisting the interpretation and implementation" of the statute. *Alabama Power Company v. Gorsuch*, 672 F.2d 1, 3 (D.C.Cir.1982); *see also Sierra Club v. Gorsuch*, 672 F.2d 33 (D.C.Cir.1982) and *Environmental Defense Fund v. Environmental Protection Agency*, 672 F.2d 42 (D.C.Cir.1982).

■ I have concluded that this case will not substantially contribute to ESA goals.

All parties conceded that the Secretary has obligations under the ESA which take precedence over his obligations to store water for M & I uses. The only ESA issue to be resolved, therefore, was the amount of water necessary to carry out the purposes of the Act. While this is important, it does not meet the standard set out in *Alabama Power v. Gorsuch* and the companion cases.

In addition, the Secretary had already commenced a program to help the qui-ui and Lahontan cutthroat trout. The Government had raised the defense of the ESA in its original answer and was actively and energetically participating in the trial of the case. The Tribe concedes that the counsel for the Government did a first-class job in defending the case, and that the Government made significant financial contributions towards its defense.

The Tribe entered the case primarily for its own economic self-interest. Most of the issues it raised, particularly those of a technical nature like the standing of the plaintiffs, were not intended to, nor did they, assist in the interpretation or implementation of the Act. In fact, some of these defenses, if they had been successful, would have had the opposite effect.

In light of all the facts, I have concluded that my earlier ruling granting attorney fees and costs for the Tribe's attorneys was ill-advised and should be vacated.

Plaintiffs interpret 16 U.S.C. § 1540(g)(1) to mean that costs, including attorney fees and expert witness fees, may be awarded to a party under 16 U.S.C. § 1540(g)(4) only when the party commences the action. Plaintiffs assert that here the Tribe did not commence the action but raised ESA as one of a number of defenses, and that as a matter of law the Tribe may not recover costs and attorney fees under ESA.

Although I do not read the statute that narrowly, it is unnecessary for me to decide this issue because I have now concluded that it is not appropriate to grant the Tribe costs and attorney fees.