Josie **RAZORE**; John **Banchero**, Plaintiffs–Appellants,

v.

The **TULALIP TRIBES OF WASHINGTON**; The Tulalip Section 17 Corporation; The Bureau of Indian Affairs; Carol Browner, Administrator of the United States Environmental Protection Agency, Defendants–Appellees.

Josie **RAZORE**; John **Banchero**, Plaintiffs–Appellees,

v.

The **TULALIP TRIBES OF WASHINGTON**; The Tulalip Section 17 Corporation, Defendants–Appellants.

Nos. 94–35985, 94–36244.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 18, 1995.

Decided Sept. 19, 1995.

**238**

Roger Truitt, Piper & Marbury, Baltimore, MD, for plaintiffs-appellants Razore and Banchero.

Keith E. Moxon, Buck & Gordon, Seattle, WA, and Joan M. Pepin, United States Department of Justice, Washington, DC, for defendants-appellees Tulalip Tribes, et al.

Before JOHN T. NOONAN, Jr., THOMPSON * and HAWKINS, Circuit Judges.

DAVID R. THOMPSON, Circuit Judge:

Section 113(h) of the Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA), 42 U.S.C. § 9613(h), bans all challenges to ongoing remedial or removal actions. The principal question in this appeal is whether a remedial investigation/feasibility study constitutes a removal or remedial action.

* Judge David R. Thompson was drawn to replace Judge Farris. He has read the briefs, reviewed the record and listened to the tape of oral argument held on July 18, 1995.

## I. FACTS

The plaintiffs operated a landfill on the Tulalip Indian Reservation from 1965 to 1979. In 1979, the Environmental Protection Agency (EPA) directed the plaintiffs to halt landfill disposal because pollution was contaminating the Snohomish River and Puget Sound. The landfill was closed pursuant to a consent decree entered into by the United States, the plaintiffs and the Tulalip Tribes. The consent decree required the plaintiffs to place a soil cover on the landfill.

The soil cover proved inadequate to stop rainwater from percolating down through the wastes and creating leachate. In 1985, the Tulalip Tribes sought to place a thicker soil cover over the landfill. The plaintiffs allege that the Tribes capped the landfill with debris such as concrete chunks, bricks and creosoted wood. In 1988, the EPA began studying the landfill. Its study revealed that groundwater and wetlands adjacent to the landfill exceeded maximum contaminant levels for several types of pollution. In 1989, the EPA informed the Tribes that the landfill might be listed as a superfund site. It recommended that additional capping efforts be postponed. The Tribes complied with the EPA's request. In 1991, the EPA proposed that the site be included on the federal National Priorities List. The site was eventually listed on May 25, 1995.

In 1993, the plaintiffs and other major principally responsible parties signed an administrative order for a remedial investigation/feasibility study (RI/FS). The parties agreed to conduct a RI/FS as directed by an EPA work plan. The objective of the RI/FS is to make an informed choice among possible cleanup alternatives. 40 C.F.R. § 300.430(a)(2). The RI/FS will be completed and cleanup will begin later in 1995.

In March 1994, the plaintiffs filed this complaint alleging that the Tribes' management of the site is violating the Clean Water Act and the Resource Conservation and Recovery Act. The Tribes and the EPA moved to dismiss the suit for lack of subject matter jurisdiction. They assert that the suit chal-

lenges an ongoing removal action under CERCLA, and consequently section 113(h), 42 U.S.C. § 9613(h), bars judicial review. The district court granted the motion to dismiss, but denied the Tribes' request for attorney fees. The plaintiffs appeal, and the Tribes cross-appeal the denial of fees.

## II. DISCUSSION

### A. Jurisdiction Barred by CERCLA § 113(h)

CERCLA is the federal government's statutory framework for cleaning up hazardous wastes. To ensure that the cleanup of contaminated sites will not be slowed or halted by litigation, Congress enacted section 113(h) in its 1986 amendments to CERCLA.[1] Section 113(h) provides in part:

> No Federal court shall have jurisdiction under Federal law ... to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title.

42 U.S.C. § 9613(h).

The statute lists five exceptions, but none is applicable here. Thus, the district court had jurisdiction to hear the plaintiffs' claims if (1) the EPA has not initiated a removal or remedial action under section 9604, or (2) the plaintiffs are not "challenging" such action.

■ The plaintiffs' principal argument on appeal is that a RI/FS is not a remedial or removal action. We reject this argument. CERCLA defines a removal action to include "such actions as may be necessary to monitor, assess, and evaluate the release or threat of release of hazardous substances ..." 42 U.S.C. § 9601(23). A RI/FS satisfies this definition. *See Boarhead Corp. v. Erickson*, 923 F.2d 1011 (3rd Cir.1991) (holding that section 113(h) bars claims under the Historical Preservation Act during the RI/FS phase of CERCLA cleanup); *South Macomb Disposal Auth. v. EPA*, 681 F.Supp. 1244, 1246 (E.D.Mich.1988) (stating that "[i]t is clear ... that a RI/FS taken by the EPA is a 'removal action' within the meaning of the statute").

The plaintiffs argue that the EPA has not selected a removal action under section 9604. This argument finds no support in the record. The Administrative Order of Consent (RI/FS consent order) was "issued under the authority vested in the President of the United States in sections 104 [section 9604], 122(a) and 122(d)(3) of [CERCLA]."

The plaintiffs argue that the EPA, after completing the RI/FS, may adopt a no-further-action alternative at the landfill. Their argument implies that even though the EPA is conducting studies, there may never be a cleanup. Although the plaintiffs' scenario may be theoretically possible, we cannot ignore the clear mandate of section 113(h). *See McClellan Ecological Seepage Situation v. Perry (MESS)*, 47 F.3d 325, 328 (9th Cir. 1995), (stating the "[s]ection 113(h) is clear and unequivocal" and "amounts to a blunt withdrawal of federal jurisdiction" (quotation omitted)), *petition for cert. filed*, May 1, 1995. Further, the EPA is obligated to consider the no-action alternative. 40 C.F.R. § 300.430(e)(6). If the EPA elects not to initiate a cleanup under CERCLA, the plaintiffs can then bring an appropriate citizen suit.

■ The plaintiffs next argue they are not "challenging" a removal action. Specifically, they contend the district court could have fashioned RCRA and CWA remedies that will not interfere with the RI/FS, and ultimately the selected cleanup plan. We reject this argument. An action constitutes a challenge if it is related to the goals of the cleanup. *MESS* at 330. The government has persuasively demonstrated that the plaintiffs' RCRA and CWA claims would affect the ongoing RI/FS. According to the Tulalip landfill site's remedial project manager, "a judicial order requiring implementation of a leachate collection system at this stage in the RI/FS would effectively terminate the present RI/FS." The district court found that "[t]he plaintiffs attempt to dictate specific remedial actions and to alter the method and order for cleanup during an RI/FS and

---

**1.** CERCLA was amended in 1986 by the Superfund Amendments and Reauthorization Act of 1986, codified as amended at 42 U.S.C. §§ 9601–9675.

prior to a determination of the ultimate remedial plan." The plaintiffs' own expert admits that the work could be halted for "days or weeks." The RCRA and CWA claims are sufficiently related to the goals of CERCLA cleanup to trigger section 113(h). *See MESS* at 330.

■ The plaintiffs raise a third argument about section 113(h). They argue that CERCLA's "savings provision," section 302(d), expressly preserves the Tribes' and the EPA's obligations under the CWA and RCRA. Section 302(d) provides in part:

Nothing in this chapter shall affect or modify in any way the *obligations or liabilities* of any person under Federal or State law, including common law with respect to releases of hazardous substances or other pollutants or contaminants.... (emphasis added).

42 U.S.C. § 9652(d). The plaintiffs argue that without citizen suit enforcement, the Tribes' obligations are not only modified but actually extinguished.

Sections 113(h) and 302(d) are not in conflict. The temporary bar to citizen enforcement does not change the Tribes' "obligations or liabilities" under the CWA or RCRA. On the other hand, if section 302(d) were to govern the interpretation of the statute, it "would effectively write [section 113(h)] out of the Act." *Westlands Water Dist. v. Natural Resources Defense Council,* 43 F.3d 457, 462 (9th Cir.1994) (citation omitted). " 'It is our duty to give effect, if possible, to every clause and word of a statute, rather than to emasculate an entire section.' " *Id.,* quoting *Estate of Reynolds v. Martin,* 985 F.2d 470, 473 (9th Cir.1993).

B. Refusing Additional Discovery not Abuse of Discretion

■ The plaintiffs assert that the district court abused its discretion by not permitting additional discovery. They contend that additional discovery could have demonstrated that RCRA and CWA compliance would not have "challenged" the CERCLA removal action. We review a district court's decision to grant or deny discovery on jurisdictional facts for abuse of discretion. *Cheng v. Boe-*

*ing Co.,* 708 F.2d 1406, 1408 (9th Cir.), *cert. denied,* 464 U.S. 1017, 104 S.Ct. 549, 78 L.Ed.2d 723 (1983).

The district court did not abuse its discretion. A denial of discovery is proper "when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *America West Airlines, Inc. v. GPA Group, Ltd.,* 877 F.2d 793, 801 (9th Cir.1989). The district court rejected the plaintiffs' motion for discovery because their complaint "on its face" attempts to impose requirements on the handling of the site. The plaintiffs admit that they were attempting either to require the Tribes to obtain permits or to stop the pollution discharges. Additional discovery would not affect the jurisdictional analysis.

C. Tribes' Cross-appeal for Attorney Fees

■ The Tulalip Tribes contend the district court abused its discretion by failing to award attorney fees. We have not considered when attorney fees will be awarded to a prevailing defendant under RCRA or CWA. The Supreme Court has held that a district court may "award attorney's fees to a prevailing defendant in a Title VII case upon a finding that the plaintiff's action was frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). The Court has adopted the same standard under 42 U.S.C. § 1988. *Hughes v. Rowe,* 449 U.S. 5, 14, 101 S.Ct. 173, 178, 66 L.Ed.2d 163 (1980) (per curiam); *see also Elks Nat'l Found. v. Weber,* 942 F.2d 1480, 1485 (9th Cir.1991), *cert. denied,* 505 U.S. 1206, 112 S.Ct. 2995, 120 L.Ed.2d 872 (1992). We agree with the district court that *Christiansburg Garment Co.* is the proper standard for RCRA and CWA suits.

■ The plaintiffs' section 113(h) jurisdictional arguments are not frivolous or unreasonable. Whether a RI/FS constitutes a remedial or removal action was, before we ruled, a novel question. Further, we have not previously considered whether section 302(d) preserves the right of citizen suit enforcement under RCRA and CWA. The dis-

trict court did not abuse its discretion in denying the Tribes' request for attorney fees. *See Elks Nat'l Found.* at 1485.

AFFIRMED. Each side shall bear its own costs on appeal.

