**MARBLED MURRELET, (Brachyramphus Marmoratus); Northern Spotted Owl, (Strix Occidentalis Caurina); Environmental Protection Information Center, Inc., Plaintiffs–Appellees,**

v.

**Bruce BABBITT, Secretary, Department of the Interior; Mollie Beattie, Director, United States Fish and Wildlife Service; Michael Spear, Region 1 Director, United States Fish and Wildlife Service; U.S. Fish and Wildlife Service, Defendants,**

and

**Pacific Lumber Company, a Delaware corporation; Scotia Pacific Holding Company, a Delaware corporation; Salmon Creek Corporation, a Delaware corporation, Defendants–Appellants.**

**No. 98–15788.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 14, 1999.

Filed July 7, 1999.

Jared G. Carter, Carter, Behnke, Oglesby & Bacik, Ukiah, California, for the defendants-appellants.

Thomas N. Lippe, Law Offices of Thomas N. Lippe, San Francisco, California, for the plaintiffs-appellees.

James M. Hecker, Trial Lawyers for Public Justice, Washington, D.C., for the amicus.

Robin L. Rivett, Pacific Legal Foundation, Sacramento, California, for the amicus.

Before: SCHROEDER, REINHARDT, and SILVERMAN, Circuit Judges.

SCHROEDER, Circuit Judge.

This is an appeal from the denial of attorney's fees to the defendant in a lawsuit under the Endangered Species Act. A non-profit environmental group filed the suit and the defendant logging company prevailed. The district court considered the defendant's claim for fees under two different standards that this court has used in the past to determine whether to award fees to a prevailing defendant in environmental cases. The district court ruled that the defendant in this case was

not entitled to fees under either standard. We affirm the denial and take this opportunity to clarify the law in this area in light of intervening Supreme Court authority.

# I

## BACKGROUND

This case arose out of a dispute over defendant-appellant Pacific Lumber's plan to log old-growth redwoods in the Headwaters Forest in Humboldt County, California. The forest, owned by Pacific Lumber, is home to the marbled murrelet and the northern spotted owl, birds protected by the Endangered Species Act ("ESA"), 16 U.S.C. §§ 1531–43. To conduct the logging in compliance with California law, Pacific Lumber needed a timber harvest plan approved by the California Department of Forestry ("CDF"). *See* Cal. Pub. Res.Code §§ 4581–82. Pursuant to California forestry regulations, *see* Cal.Code Regs. tit. 14, § 919.5, the CDF approved the plan by soliciting concurrence letters from the U.S. Fish and Wildlife Service ("FWS") stating that the proposed logging would be unlikely to harm endangered species. Pacific Lumber also consulted directly with the FWS to determine what it would have to do to avoid a "take" of endangered species prohibited by § 9 of the ESA. *See* 16 U.S.C. §§ 1532 & 1538.

In September 1995, plaintiff-appellee the Environmental Protection Information Center ("EPIC") sued Pacific Lumber, the FWS, and several other defendants, alleging that they were violating §§ 7 and 9 of the ESA. In its § 7 claim, EPIC argued that the FWS' consultation letters approving Pacific Lumber's timber harvest plan and its advice to Pacific Lumber constituted "agency actions" that required the FWS to prepare a biological assessment and a biological opinion detailing the impact the action could have on endangered and threatened species. *See* 16 U.S.C. § 1536(a). The § 7 claim also listed Pacific Lumber as a defendant on the theory that by cooperating with the FWS, Pacific Lumber had "assumed responsibility for compliance with federal laws governing the actions" of the FWS. In its claim under § 9 of the ESA, EPIC argued that Pacific Lumber's logging would constitute a prohibited "take" of marbled murrelets.

The district court initially entered a preliminary injunction on EPIC's § 7 claim. This court reversed the injunction in June 1996, holding plaintiffs had not raised any serious question. *See Marbled Murrelet v. Babbitt*, 83 F.3d 1068 (9th Cir.1996). EPIC amended its complaint to add a second § 7 claim. The district court again entered a preliminary injunction, and this court again reversed and vacated the injunction on similar grounds. *See Marbled Murrelet v. Babbitt*, 111 F.3d 1447 (9th Cir.1997). On remand, the district court granted summary judgment to Pacific Lumber on the § 7 claims. EPIC voluntarily dismissed its § 9 claim.

Pacific Lumber then moved for approximately $670,000 in attorney's fees and costs under § 11 of the ESA, which allows the district court to award fees to "any party" where "appropriate." 16 U.S.C. § 1540(g)(4). The district court denied Pacific Lumber's motion on the alternative grounds that Pacific Lumber could meet neither the standard of *Carson–Truckee Water Conservancy Dist. v. Secretary of the Interior*, 748 F.2d 523 (9th Cir.1984), which allows prevailing defendants attorney's fees whenever the defendants' actions "substantially contributed" to the goals of the ESA, nor the standard of *Razore v. Tulalip Tribes of Washington*, 66 F.3d 236 (9th Cir.1995), which allows prevailing defendants attorney's fees under the Clean Water Act ("CWA") and the Resource Conservation and Recovery Act ("RCRA") if the plaintiffs' lawsuit was "frivolous, unreasonable or without foundation." Pacific Lumber appeals.

# II

## DISCUSSION

### A. The Appropriate Standard for Awarding Defendant Fees

Section 11(g)(4) of the Endangered Species Act provides that a district court "may

award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate." 16 U.S.C. § 1540(g)(4). Many other environmental statutes likewise permit fees "where appropriate."[1] This circuit has interpreted the ESA, the CWA, and these other environmental statutes in two different ways.

In *Carson–Truckee*, a Nevada water district sued the Department of the Interior under several reclamation statutes to force the sale of water from a reservoir. The Pyramid Lake Paiute Tribe intervened as a defendant and asserted, among other things, that the government's obligations under the ESA to leave water for endangered fish trumped its obligation under the reclamation laws to sell water for municipal and industrial use. *See Carson–Truckee Water Conservancy Dist. v. Watt*, 575 F.Supp. 467, 468 (D.Nev.1983), *aff'd*, 748 F.2d 523 (9th Cir.1984). The district court agreed with the Tribe and dismissed the suit. It refused, however, to grant the Tribe attorney's fees on the ground that the Tribe had not substantially contributed to the goals of the Act. *See id.* at 469.

This court affirmed. We rejected the Tribe's suggestion that the district court should have applied *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978), which allows attorney's fees to a prevailing defendant under the Civil Rights Act of 1964 if the plaintiff's action was frivolous. We distinguished the Civil Rights Act on the ground that it contains an attorney's fees provision that allows attorney's fees to "prevailing parties," *see* 42 U.S.C. § 2000e–5(k), whereas the ESA allows fees "where appropriate." *Carson–Truckee*, 748 F.2d at 526 (quoting *Newman v. Piggie Park Enterprises*, 390 U.S. 400, 402, 88 S.Ct. 964, 19 L.Ed.2d 1263 (1968)). Instead, citing D.C. Circuit case law, we held in *Carson–Truckee* that an award of attorney's fees is appropriate only if the party

has substantially contributed to the goals of the statute. *See Carson–Truckee*, 748 F.2d at 525–26 (citing *Sierra Club v. Gorsuch*, 672 F.2d 33 (D.C.Cir.1982), *rev'd sub nom. Ruckelshaus v. Sierra Club*, 463 U.S. 680, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)). In deciding the extent of a party's contribution, we said that "the dominant consideration is whether litigation by the party has served the public interest by assisting the interpretation or implementation" of the ESA. *Id.* at 525 (quoting *Alabama Power Co. v. Gorsuch*, 672 F.2d 1, 3 (D.C.Cir.1982)). We concluded that because the Tribe had merely duplicated the efforts of the United States and had asserted other defenses inconsistent with the implementation of the ESA, it had not substantially contributed to the goals of the ESA.

Eleven years later, in *Razore v. Tulalip Tribes of Washington*, 66 F.3d 236 (9th Cir.1995), we adopted a different standard for attorney's fees under RCRA and the CWA. The owner of a landfill on a reservation had sued the Tulalip Tribes under RCRA and the CWA for the Tribes' counter-productive attempt to stop polluted runoff from the landfill. The district court dismissed the owner's suit on the merits, but refused to grant the defendant Tribes attorney's fees. We adopted for RCRA and the CWA the *Christiansburg* civil rights standard of frivolousness that we had rejected for the ESA in *Carson–Truckee*. *See Razore*, 66 F.3d at 240 (quoting *Christiansburg*, 434 U.S. at 421, 98 S.Ct. 694). We found the plaintiff's action against the Tribes not to have been frivolous, and affirmed the denial of attorney's fees.

We will follow *Razore*, not *Carson–Truckee*, and now hold that the *Christiansburg* standard for prevailing defendants applies in this case. *Carson–Truckee's* holding that the "substantial contribution"

---

1. *See, e.g.,* Clean Air Act, 42 U.S.C. § 7607(f); Toxic Substances Control Act, 15 U.S.C. § 2618(d); Surface Mining Control and Reclamation Act, 30 U.S.C. (Supp.IV) § 1270(d); and other environmental statutes listed in *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682 n. 1, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

standard applies to prevailing defendants in ESA suits is no longer good law. Two years after *Carson–Truckee*, the Supreme Court indicated that attorney's fees provisions in environmental statutes with similar language and purpose as the attorney's fees provision in the Civil Rights Acts should be interpreted in the same way. *See Pennsylvania v. Delaware Valley Citizens' Council*, 478 U.S. 546, 106 S.Ct. 3088, 92 L.Ed.2d 439 (1986). In *Delaware Valley*, the Court addressed whether a prevailing plaintiff in a Clean Air Act ("CAA") case can receive attorney's fees for participating in administrative proceedings. The Court compared § 304(d) of the CAA, 42 U.S.C. § 7604(d), which authorizes fees in "any action" under the Act, with the civil rights attorney's fees provision, 42 U.S.C. § 1988, which authorizes fees for "any action or proceeding" and which had been interpreted to allow fees for administrative proceedings. The Court pointed out that even though the two sections are worded slightly differently, their purposes "are nearly identical." *Delaware Valley* at 559, 106 S.Ct. 3088. Specifically, § 1988 "was enacted to insure that private citizens have a meaningful opportunity to vindicate their rights protected by the Civil Rights Acts," *id.* at 559, and § 304(d) was meant to encourage "citizen participation in the enforcement of standards and regulations established under [the CAA]," *id.* at 560, 106 S.Ct. 3088 (quoting S.Rep. No. 91–1196, p. 36 (1970)). The Court concluded that "[g]iven the common purpose of both § 304(d) and § 1988 to promote citizen enforcement of important federal policies, we find no reason not to interpret both provisions governing attorney's fees in the same manner."

Delaware Valley has thus essentially overruled the reasoning of our decision in *Carson–Truckee*. Like § 304(d) of the CAA, § 11(g)(4) of the ESA is very similar to the civil rights attorney's fees provision. The ESA attorney's fees provision allows

the award of attorney's fees "to any party, whenever the court determines such award is appropriate." Section 1988 states that a court "in its discretion, may allow the prevailing party ... a reasonable attorney's fee." The most obvious difference between the two is that § 1988 specifies that the party must be prevailing whereas the ESA does not, but the difference is immaterial, because the Supreme Court has read a prevailing party requirement into the ESA. *See Ruckelshaus v. Sierra Club*, 463 U.S. 680, 682 & n. 1, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983).

■ The attorney's fees provisions of the ESA and the Civil Rights Act of 1964 likewise have a common purpose.[2] The *Christiansburg* Court adopted the frivolity standard for prevailing defendants because the legislative history of the Civil Rights Act indicated Congress' desire to prevent "frivolous" or "unjustified" suits. *Christiansburg*, 434 U.S. at 420, 98 S.Ct. 694. The legislative history of the ESA suggests a similar desire on the part of Congress. The House Report on the ESA stated that the attorney's fees provision of the ESA should be interpreted in the same fashion as the identical provision in the Marine Protection, Research, and Sanctuaries Act ("MPRSA"). *See* H. Rep. No. 412, 93d Cong., 1st Sess. 19 (1973). The Senate Committee Report on the MPRSA stated that prevailing defendants could receive fees only if the purpose of the suit was harassment. *See* 1972 U.S.Code Cong. & Admin. News 4234, 4249–50. Given the similarity in language and purpose between the attorney's fees provisions of the Civil Rights Act and the ESA, *Delaware Valley* mandates that we apply to the ESA the civil rights standard for awarding fees to prevailing defendants. We can find no contrary authority in any other circuits. The only circuit case since *Delaware Valley* to award fees to a prevailing defendant

---

**2.** Although *Delaware Valley* involved the attorney's fees provision in 42 U.S.C. § 1988 and *Christiansburg* addressed the attorney's fees provision in Title VII, 42 U.S.C. § 2000e–5(k), the two provisions are interpreted to be the same. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983).

in an environmental case did so without any analysis of what standard should be applied. *See Sierra Club v. Shell Oil,* 817 F.2d 1169, 1176 (5th Cir.1987).

**B. Application of the *Christiansburg* standard in this case**

█ Of the two claims in EPIC's complaint, one, the § 7 claim, is not at issue under the *Christiansburg* standard, for Pacific Lumber does not contend that EPIC's § 7 claim was frivolous. The district court did not abuse its discretion in determining that the § 9 claim was not frivolous when filed, even though it was brought with limited evidentiary support, because most of the possible evidence was located on Pacific Lumber's private land and because EPIC's decision to sue was based on an expert's opinion about the potential effects of logging.

█ Under the *Christiansburg* standard, a prevailing defendant may also be entitled to fees if the plaintiff continued to litigate the suit after it clearly became frivolous. *See* 434 U.S. at 422, 98 S.Ct. 694. Pacific Lumber initially contends that the district court failed to apply this second part of the *Christiansburg* frivolity test, but the district court was aware of both aspects of the test. It set forth Pacific Lumber's position to be both that "EPIC brought the Section 9 claim without supporting evidence" and that "it continued to litigate the claim without such evidence." The district court's ruling in favor of EPIC on this issue was not an abuse of discretion. Although EPIC voluntarily dismissed its § 9 claim, a case is not automatically meritless merely because the plaintiff eventually lost its case. *See id.* at 421, 98 S.Ct. 694. There is evidence in the record to support the district court's conclusion that EPIC's litigation may have contributed to Pacific Lumber's decision to abandon helicopter logging. Pacific Lumber does not point to any evidence developed during the course of litigation that should have put EPIC on notice that its suit was frivolous. We therefore affirm

the district court's application of the *Christiansburg* standard.

AFFIRMED.