# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

SAINT JOHN'S ORGANIC FARM;
PETER DILL, individually,
          *Plaintiffs-Appellants,*

          v.

GEM COUNTY MOSQUITO
ABATEMENT DISTRICT, a political
subunit of the State of Idaho; GEM
COUNTY, STATE OF IDAHO, a
political unit of the State of Idaho,
          *Defendants-Appellees.*

No. 07-35797

D.C. No.
CV-04-00087-BLW

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the District of Idaho
B. Lynn Winmill, District Judge, Presiding

Argued and Submitted
March 10, 2009—Seattle, Washington

Filed July 16, 2009
Amended August 3, 2009

Before: William A. Fletcher, Ronald M. Gould and
Richard C. Tallman, Circuit Judges.

Opinion by Judge William A. Fletcher;
Concurrence by Judge Tallman

10033

## COUNSEL

William M. Eddie; FIELD JERGER, LLP, Portland, Oregon, Charles M. Tebbutt, WESTERN ENVIRONMENTAL LAW CENTER, Eugene, Oregon, for the appellants.

Susan E. Buxton, MOORE SMITH BUXTON & TURCKE, Boise, Idaho, Mark L. Pollott, Boise, Idaho, Murray D. Feldman, HOLLAND & HART, LLP, Boise, Idaho, Michael John Kane, Boise, Idaho, for the appellee.

## ORDER

The opinion filed in this matter on July 16, 2009 is amended as follows:

1. The party caption is amended to delete the reference to intervenor parties and now reads:

"SAINT JOHN'S ORGANIC FARM; PETER DILL, individually,

Plaintiffs - Appellants,

v.

GEM COUNTY MOSQUITO ABATEMENT DISTRICT, a political subunit of the State of Idaho; GEM COUNTY, STATE OF IDAHO, a political unit of the State of Idaho,

Defendants - Appellees."

2. The counsel listing is amended to delete any reference to counsel for intervenor parties and now reads:

"William M. Eddie, FIELD JERGER, LLP, Portland, OR, Charles M. Tebbutt, WESTERN ENVIRONMENTAL LAW CENTER, Eugene, OR, for the Appellants

Susan E. Buxton, MOORE SMITH BUXTON & TURCKE, Boise, ID, Mark L. Pollott, Boise, ID, Murray D. Feldman, HOLLAND & HART, LLP, Boise, ID, Michael John Kane, Boise, ID, for the Appellee"

---

**OPINION**

W. FLETCHER, Circuit Judge:

Plaintiffs Saint John's Organic Farm and Peter Dill (collectively, "Dill") filed suit under the citizen-suit provisions of the Clean Water Act ("CWA"), 33 U.S.C. § 1365, against the Gem County Mosquito Abatement District and Gem County (collectively, "GCMAD"). Dill alleged that GCMAD's discharges of pesticides directly into the waters of the United States without a National Pollutant Discharge Elimination System ("NPDES") permit violated the CWA. Dill and GCMAD settled the suit.

The Settlement Agreement ("Agreement") limited GCMAD's pesticide spraying in several ways and provided that an application for "costs of litigation (including reasonable attorney and expert witness fees)" under 33 U.S.C. § 1365(d) could be made to the district court. (For ease of reference, we will refer simply to "attorney's fees.") The district

court denied Dill's attorney's fees application, holding under § 1365(d) that Dill was not a "prevailing or substantially prevailing party" and, in the alternative, that it was not "appropriate" to grant fees to Dill.

We reverse. We hold that Dill was a prevailing party under § 1365(d). We remand to the district court to consider whether fees are appropriate under the standard articulated in this opinion.

## I.   Background

This case arises out of GCMAD's longstanding use of pesticides to control mosquitoes in Gem County, Idaho. Among other measures, GCMAD has applied adulticides — pesticides used to kill adult mosquitoes — by spraying from airplanes and "fogging" from trucks. Dill sent GCMAD a notice of intent to sue pursuant to 33 U.S.C. § 1365(b), alleging that GCMAD was required to obtain an NPDES permit from the Environmental Protection Agency ("EPA") for its discharge of pesticides (not limited to adulticides) into the waters of the United States. GCMAD then applied to the EPA for an NPDES permit. The EPA responded that an NPDES permit was unnecessary (and therefore unavailable) under an EPA interim interpretive guidance.

After the EPA refused to grant a permit to GCMAD, the parties engaged in preliminary settlement talks. Before a settlement was reached, however, GCMAD brought suit against the EPA and Dill in federal district court for the District of Columbia. GCMAD sought a declaratory judgment that either it was not required to obtain a permit or that the EPA was required to issue it a permit. However, GCMAD consistently contended in that court that a permit was not required. Dill responded by filing suit in federal district court in Idaho. As he had alleged in his intent-to-sue letter, Dill again alleged that GCMAD was violating the CWA by discharging pesticides (not limited to adulticides) into the waters of the United

States without an NPDES permit. The district court in Idaho stayed proceedings pending resolution of the suit in D.C. district court.

The D.C. district court dismissed GCMAD's suit in January 2003. *Gem County Mosquito Abatement Dist. v. EPA*, 398 F. Supp. 2d 1, 4 (D.D.C. 2005). It held that there was no case or controversy between GCMAD and the EPA because both parties took the position that no permit was required. *Id.* at 6-8. It further held that venue in D.C. was improper for GCMAD's claim against Dill. *Id.* at 12-13. GCMAD appealed this decision to the D.C. Circuit, but then dismissed its own appeal. *Gem County Mosquito Abatement Dist. v. EPA*, 2005 WL 3789086 (D.C. Cir. Sept. 8, 2005).

The Idaho district court lifted its stay in March 2005. In July 2006, the parties filed a Settlement Agreement ("Settlement Agreement" or "Agreement") with the district court. The Agreement requires GCMAD: (1) to make a concerted effort to substantially reduce over five years its use of adulticides by attempting to meet yearly targets for reduced use; (2) not to engage in aerial spraying of adulticides except in the event of a declared health emergency; (3) not to engage in truck fogging of adulticides within 300 feet of the Payette River; on the Payette River Wildlife Management area or within 300 feet of a section of that area; or on or within 150 feet of any irrigation canal in the county; (4) to conduct surveillance monitoring and upgrade surveillance activities for mosquitoes and apply mosquito threshold standards before fogging; (5) to contribute funds annually to the Gem County Soil and Water Conservation District to help improve drainage in order to facilitate reduction of mosquito habitat; (6) to participate in a state planning committee on the West Nile Virus; (7) to work with landowners to eliminate mosquito habitat; and (8) to apply reasonable standards, take reasonable steps, and consider all relevant factors when complying with requests from property owners that their property not be sprayed.

The Agreement requires Dill: (1) to release all claims against GCMAD under the CWA and dismiss his suit with prejudice; (2) to work with GCMAD to notify Dill's neighbors about the Agreement and the mosquito control methods to be used around his land; (3) to introduce additional mosquito predators on his property; and (4) to agree not to sue under the CWA as long as GCMAD complies with the Agreement.

The Agreement provides that the district court should retain jurisdiction to enforce its terms. Finally, the Agreement provides, "The parties have not agreed on the issues of attorney fees and costs. The parties agree that the Court will retain jurisdiction to decide any applications for attorney fees and costs pursuant to 33 U.S.C. § 1365(d) submitted by any party."

Dill applied to the district court for attorney's fees. The district court denied Dill's application under 33 U.S.C. § 1365(d), holding that Dill was not a "prevailing or substantially prevailing party" and, in the alternative, that an award was not "appropriate." Dill timely appealed.

## II.   Standard of Review

We review the district court's award or denial of attorney's fees for abuse of discretion. *Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000). Under this standard, we review the district court's factual findings for clear error and review de novo its legal analysis. *Id.*

## III.   Discussion

[1] Section 505(d) of the CWA provides:

> The court, in issuing any final order in any action brought pursuant to this section, may award costs of litigation (including reasonable attorney and expert

witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate.

33 U.S.C. § 1365(d). In order to award attorney's fees under § 1365(d), a district court must make two findings. First, it must find that the fee applicant is a "prevailing or substantially prevailing party." Second, it must find that an award of attorney's fees is "appropriate." We address each in turn.

A.    "Prevailing or Substantially Prevailing Party"

Dill contends that he is a prevailing party within the meaning of § 1365(d). He makes two arguments. First, he argues that he received "actual relief on the merits of his claim" that "materially alter[ed]" the legal relationship between him and GCMAD by "modifying [GCMAD's] behavior in a way that directly benefits" Dill. *Richard S. v. Dep't of Dev. Servs. of Cal.*, 317 F.3d 1080, 1086 (9th Cir. 2003) (internal quotation marks omitted). Second, in the alternative, he argues that he is entitled to recover fees on the "catalyst theory." For the reasons that follow, we agree with Dill's first argument. We do not reach his second argument.

**[2]** A litigant qualifies as a prevailing party if it has obtained a "court-ordered 'chang[e] [in] the legal relationship between [the plaintiff] and the defendant.' " *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 604 (2001) (alterations in original) (citation omitted). "[T]he plaintiff must be able to point to a resolution of the dispute which changes the legal relationship between itself and the defendant." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792 (1989). Following *Buckhannon* and *Texas State Teachers*, we have held that parties must have obtained judicially enforceable "actual relief on the merits of [their] claim that materially alter[ed] the legal relationship between the parties." *Richard S.*, 317 F.3d at

1087 (alterations in original) (internal quotation marks omitted).

We divide our application of *Richard S.* to the Settlement Agreement into three parts: (1) judicial enforcement; (2) material alteration of the legal relationship between the parties; and (3) actual relief on the merits of Dill's claim.

**[3]** First, we conclude that the terms of the Agreement are judicially enforceable. The Agreement specifically provided that its terms would be enforceable by the district court. Pursuant to the Agreement, the district court's order dismissing Dill's complaint provided, "The Court expressly retains jurisdiction over the matter for the purposes of (i) enforcing the Settlement Agreement entered into between the parties and the terms of the Settlement Agreement are incorporated herein by reference, and (ii) deciding any applications for attorney fees and costs pursuant to 33 U.S.C. § 1365(d)." Binding settlement agreements over which the district court retains jurisdiction to enforce are judicially enforceable. *Richard S.*, 317 F.3d at 1088.

**[4]** Second, we conclude that the Agreement effected a material alteration in the legal relationship between the parties. Dill and GCMAD did not agree in the district court on whether, or how much, GCMAD's behavior was changed as a result of the Agreement. Dill contended that the Agreement required GCMAD to change the manner in which it had been applying, and would apply, adulticides. However, GCMAD contended that the Agreement required it to do only what it was already doing and would continue to do. The district court declined to resolve this dispute. But the court noted that even if the Agreement required GCMAD to do only what it was already doing, it was undisputed that GCMAD's behavior became legally required rather than voluntary as a result of the Agreement.

Third, for the reasons that follow, we conclude that Dill achieved actual relief on the merits of his claim. To achieve

such relief, a plaintiff must receive some actual relief that serves the goals of the claim in his or her complaint. As explained below, the relief achieved need not be of precisely the same character as the relief sought in the complaint, but it must require defendants to do something they otherwise would not have been required to do.

**[5]** The threshold for sufficient relief to confer prevailing party status is not high. "If the plaintiff has succeeded on any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing suit, the plaintiff has crossed the threshold to a fee award of some kind." *Tex. State Teachers*, 489 U.S. at 791-92 (alteration in original) (internal quotation marks omitted). In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Supreme Court made clear how little actual relief is necessary. Plaintiffs had received only nominal damages at trial, even though in the complaint they had sought substantial actual damages. The Court nonetheless held that the plaintiffs were eligible for attorney's fees as prevailing parties, explaining that "a plaintiff who wins nominal damages is a prevailing party" because a "judgment for damages in any amount, whether compensatory or nominal, modifies the defendant's behavior for the plaintiff's benefit by forcing the defendant to pay an amount of money he otherwise would not pay." *Id.* at 112-13. Thus, while the nature and quality of relief may affect the amount of the fees awarded, an extremely small amount of relief is sufficient to confer prevailing party status. *See id.* at 114.

In *Fischer*, 214 F.3d at 1115, we applied *Farrar* to hold not only that the amount of relief obtained may be much smaller than the amount sought, but also that it need not be identical in form. The plaintiff in *Fischer* had sought injunctive relief under the Americans with Disabilities Act against an inn that had refused to allow him to enter with his service dog. *Id.* at 1117. The parties entered into a settlement under which the inn agreed to print a four-paragraph statement explaining its policy of nondiscrimination against people with disabilities.

*Id.* The district court denied a grant of attorney's fees, but we reversed, holding that "[b]ecause Fischer has an enforceable settlement that requires the Inn to do something it otherwise would not be required to do, Fischer is a 'prevailing party.' " *Id.* at 1118. We stated, "According to Fischer's complaint, the goal of his ADA claim was to obtain an injunction that would force the Inn to change its alleged policy and practice of denying access to people who use service dogs. In the end that is exactly what he achieved." *Id.* at 1120.

In this case, Dill sought to require GCMAD to cease discharging pesticides into the waters of the United States unless it could obtain a NPDES permit. Specifically, the complaint asked the district court, inter alia, to "grant the following relief:" "Enjoin Defendants from applying pollutants in the Payette River, its tributaries, and all other surface waters in such a manner as will result in further violations of the Act. In particular, Plaintiffs seek an order enjoining Defendants from discharging pollutants without a NPDES permit."

The EPA refused to issue a permit to GCMAD on the ground that under its interim interpretive guidance no permit was necessary for GCMAD to engage in discharge of pesticides for purposes of mosquito control. This guidance was incorporated into a formal regulation providing that mosquito abatement programs that comply with the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") do not result in the discharge of pollutants under the CWA and therefore do not require a NPDES permit. 40 C.F.R. § 122.3(h); 71 Fed. Reg. 68483 (Nov. 27, 2006). The regulation was eventually held invalid in *National Cotton Council of America v. EPA*, 553 F.3d 927 (6th Cir. 2009), a multidistrict litigation decision that is binding in this circuit. Under *National Cotton Council*, GCMAD is now required to obtain a NPDES permit for its pesticide aerial spraying and truck fogging that results in "pesticide residue and excess pesticide" being discharged into the waters of the United States. *Id.* at 940.

**[6]** Dill did not succeed in obtaining the precise legal ruling and relief that he sought in his complaint. Perhaps if he had had enough money, he could have continued his suit and joined in the multidistrict litigation that culminated in the Sixth Circuit's decision in *National Cotton Council*. But he settled instead. In practical terms, the remedy Dill achieved in the Settlement Agreement was an important part of what he sought in his suit under the CWA. In his complaint, Dill asked for an injunction against unpermitted discharges of all pesticides (not limited to adulticides) into specified waters of the United States. In his judicially enforceable Agreement, Dill got the equivalent of an injunction against discharges of adulticides into those waters. That is, GCMAD entered into a judicially enforceable Agreement not to engage in any aerial spraying of adulticides except in a declared health emergency, and not to engage in any truck fogging within either 300 or 150 yards of specifically described waterways, including the Payette River.

**[7]** The relief achieved by Dill in the Agreement clearly promoted the goals of the CWA. "The purpose of an award of costs and fees is . . . to encourage the achievement of statutory goals." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 706 (1983); *see also Tex. State Teachers*, 489 U.S. at 793 (holding that a prevailing party alters the legal relationship between the parties "in a manner which Congress sought to promote in the fee statute"). The goal of the CWA is "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters" by eliminating pollution. 33 U.S.C. § 1251(a). The CWA achieves this goal by forbidding or minimizing pollution through the NPDES permitting process. Dill achieved this goal by forbidding or minimizing adulticide pollution directly through the Settlement Agreement.

Based on the EPA's construction of the CWA in its then-interim guidance under which GCMAD was not required to obtain a NPDES permit, the district court concluded that Dill's relief did not promote the goals of the CWA. However,

the interim guidance (later, the formal regulation) on which EPA relied has now been held invalid in *National Cotton Council* as inconsistent with the CWA, in a decision rendered after the district court ruled on Dill's application for attorney's fees. The Sixth Circuit's decision in that case vindicates Dill's litigation position that GCMAD's actions violated the CWA, and shows that the terms of the Agreement reducing discharges of pesticides into the waters of the United States serve the goal of the CWA.

**[8]** We therefore hold that the Agreement meets the three conditions necessary to make Dill a prevailing party.

### B.   "Appropriate"

**[9]** Section 1365(d) provides that the district court may award attorney's fees to a prevailing party "whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). The district court held that even if Dill were a prevailing party, an award of attorney's fees was not "appropriate" in the circumstances of this case. We have not previously articulated the standard under which a court may determine if a fee award to a prevailing plaintiff under the CWA is "appropriate," and the district court necessarily was left on its own to determine the proper standard. We take the opportunity today to articulate that standard, and we remand to the district court for application of the standard in the first instance.

Our sister circuits have not agreed on a uniform standard for determining appropriateness for a prevailing plaintiff under § 1365(d). The First Circuit has stated that district courts have "wide discretion" to determine the appropriateness of fees under the CWA, but it has not articulated a standard to guide the exercise of this discretion. *United States v. Comunidades Unidas Contra la Contaminacion*, 204 F.3d 275, 283 (1st Cir. 2000). The Third Circuit has effectively read "appropriate" out of the statute, holding that the CWA "places no restriction on the award other than that the party

entitled to the award be 'prevailing or substantially prevailing.' " *Penn. Envtl. Def. Found. v. Canon-McMillan Sch. Dist.*, 152 F.3d 228, 231 (3d Cir. 1998). The Fourth and Fifth Circuits have held that fees are appropriate whenever a prevailing party's suit has served the public interest or advanced the goals of the statute. *Chem. Mfrs. Ass'n v. EPA*, 885 F.2d 1276, 1279 (5th Cir. 1989) (finding that an award is usually "appropriate" when a party has advanced the goals of the statute invoked in the litigation); *Stoddard v. W. Carolina Reg'l Sewer Auth.*, 784 F.2d 1200, 1209 (4th Cir. 1986) (finding that plaintiffs were entitled to fees because they have "served the public interest"). The Eleventh Circuit has held that "good cause" is needed to deny attorney's fees to a prevailing party. *Atl. States Legal Found., Inc. v. Tyson Foods, Inc.*, 897 F.2d 1128, 1142-43 (11th Cir. 1990).

**[10]** For the reasons that follow, we do not adopt any of these standards, and instead hold that the "special circumstances" standard first elaborated in *Newman v. Piggie Park Enterprises, Inc.*, 390 U.S. 400 (1968), is the proper standard for determining whether an award of attorney's fees to a prevailing plaintiff is "appropriate" under § 1365(d).

**[11]** In *Piggie Park*, the Supreme Court considered a request for attorney's fees under Title II of the Civil Rights Act of 1964. It held that "one who succeeds in obtaining an injunction under [Title II] should ordinarily recover an attorney's fee unless *special circumstances* would render such an award unjust." *Id.* at 402 (emphasis added). The Court reasoned:

> When a plaintiff brings an action under that Title, he cannot recover damages. If he obtains an injunction, he does so not for himself alone but also as a "private attorney general," vindicating a policy that Congress considered of the highest priority. If successful plaintiffs were routinely forced to bear their own attorneys' fees, few aggrieved parties would be in a

> position to advance the public interest by invoking the injunctive powers of the federal courts. Congress therefore enacted the provision for counsel fees — not simply to penalize litigants who deliberately advance arguments they know to be untenable but, more broadly, to encourage individuals injured by racial discrimination to seek judicial relief under Title II.

*Id.* at 402. We have interpreted the "special circumstances" standard of *Piggie Park* quite strictly, such that fee awards "should be the rule rather than the exception." *Ackerley Commc'ns, Inc. v. City of Salem*, 752 F.2d 1394, 1396 (9th Cir. 1985) (internal quotation marks omitted).

**[12]** We have applied the *Piggie Park* "special circumstances" standard in a variety of statutes. We have necessarily applied it to all successful civil rights plaintiffs under 42 U.S.C. § 1988. *See, e.g.*, *Gilbrook v. City of Westminster*, 177 F.3d 839, 878 (9th Cir. 1999). And we have applied it, as has the Supreme Court, to other statutes in which a successful plaintiff has served the public interest. *See, e.g.*, *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 417 (1978) (Title VII); *Northcross v. Bd. of Educ.*, 412 U.S. 427, 428 (1973) (Emergency School Aid Act, 20 U.S.C. § 1617); *Smith v. CMTA-IAM Pension Trust*, 746 F.2d 587, 589 (9th Cir. 1984) (ERISA); *Seattle Sch. Dist. No. 1 v. Washington*, 633 F.2d 1338, 1348 (9th Cir. 1980) (20 U.S.C. § 3205, relating to school desegregation cases); *Hannon v. Sec. Nat'l Bank*, 537 F.2d 327, 328 (9th Cir. 1976) (Truth in Lending Act).

In *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air* ("*Delaware Valley*"), 478 U.S. 546 (1986), the Supreme Court interpreted § 304(d) of the Clean Air Act ("CAA"), which authorizes an award of attorney's fees to a successful party. The Court interpreted § 304(d) in the same manner as § 1988, writing, "Given the common purpose of both § 304(d) and § 1988 to promote citizen enforcement of

important federal policies, we find no reason not to interpret both provisions governing attorney's fees in the same manner." 478 U.S. at 560. The language of § 304(d) of the CAA is essentially the same as § 1365(d), the attorney's fees provision of the CWA before us today. 42 U.S.C. § 7604(d) (providing that district court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate"). The only difference is the absence of any "prevailing party" language in § 304(d), but the Supreme Court has read "prevailing party" into § 304(d) and other attorney's fees provisions in environmental statutes. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air* ("*Delaware Valley II*"), 483 U.S. 711, 713 (1987); *Ruckelshaus*, 463 U.S. at 682 n.1.

In *Marbled Murrelet v. Babbitt*, 182 F.3d 1091 (9th Cir. 1999), we applied *Delaware Valley* to the attorney's fees provision of the Endangered Species Act ("ESA"). Citing *Delaware Valley*, we wrote that "attorney's fees provisions in environmental statutes with similar language and purpose as the attorney's fees provision in the Civil Rights Acts should be interpreted in the same way." *Id.* at 1095; *see also Ruckelshaus*, 463 U.S. at 691 ("[S]imilar attorney's fee provisions should be interpreted *pari passu*."). We concluded, "Given the similarity in language and purpose between the attorney's fees provisions of the Civil Rights Act and the ESA, *Delaware Valley* mandates that we apply to the ESA the civil rights standard for awarding fees to prevailing [parties]." *Marbled Murrelet*, 182 F.3d at 1095. Like § 304(d) of the CAA, the attorney's fees provision of the ESA is essentially the same as § 1365(d) of the CWA. 16 U.S.C. § 1540(g)(4) (providing that district court "may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate"); *Ruckelshaus*, 463 U.S. at 682 n.1; *Marbled Murrelet*, 182 F.3d at 1095.

**[13]** The CAA (at issue in *Delaware Valley*), the ESA (at issue in *Marbled Murrelet*), and the CWA (at issue in this case) are all broad public interest statutes that authorize citizen suits to enforce their substantive provisions. Moreover, the language in the attorney's fees provisions in each of the three statutes is in all relevant ways identical. We interpret § 1365(d) the same way the Supreme Court interpreted § 304(d) of the CAA in *Delaware Valley* and the same way we interpreted § 1365(d) of the ESA in *Marbled Murrelet*. We therefore conclude, following *Piggie Park* and its progeny, that the word "appropriate" in § 1365(d) means the same thing it does in § 1988 and the other civil rights statutes with respect to an award of attorney's fees to a prevailing plaintiff. We note that our conclusion accords with the highly persuasive analysis of a district court in our circuit that, more than twenty-five years ago, applied the *Piggie Park* standard to a request for attorney's fees by a prevailing plaintiff under the CWA. *Nw. Indian Cemetery Protective Ass'n v. Peterson*, 589 F. Supp. 921, 927 (N.D. Cal. 1983) (Weigel, J.).

**[14]** We hold that the district court may deny attorney's fees to a prevailing plaintiff under § 1365(d) only where there are "special circumstances."**[1]** Under this standard, "the court's discretion to deny a fee award to a prevailing plaintiff is narrow," *N.Y. Gaslight Club, Inc. v. Carey*, 447 U.S. 54, 68 (1980), and a denial of fees on the basis of "special circumstances" is "extremely rare." *Borunda v. Richmond*, 885 F.2d 1384, 1392 (9th Cir. 1988) (internal quotation marks and cita-

---

**[1]**Our holding today is limited to the standard under which attorney's fees should be awarded to a prevailing plaintiff under the CWA. In *Marbled Murrelet*, we held that a prevailing defendant is entitled to fees under the ESA only if the plaintiff's lawsuit is frivolous under the standard established in *Christiansburg Garment Co.*, 434 U.S. 412, 421 (1978). *Marbled Murrelet*, 182 F.2d at 1095-96. The question of when it is "appropriate" to award fees under the CWA to a prevailing defendant is not before us today, but we see no reason why the standard from *Christiansburg*, applied to the ESA in *Marbled Murrelet*, would not apply equally to the CWA as well.

tions omitted). A defendant's good faith belief that it was following the law does not qualify as a "special circumstance." *Teitelbaum v. Sorenson*, 648 F.2d 1248, 1250-51 (9th Cir. 1981).

[15] The district court has not had the opportunity to apply this standard to this litigation. We therefore remand to that court for a determination, under this standard, whether an award of attorney's fees is "appropriate" within the meaning of § 1365(d).

## IV.   D.C. District Court Suit

Because the district court did not award attorney's fees to Dill, it did not decide whether attorney's fees should have been awarded not only for the work done in connection with the suit in the Idaho district court, but also for the work done in connection with the suit in the D.C. district court. Therefore, we remand to the district court to allow it to address that question in the first instance.

## Conclusion

We hold that Dill is a prevailing party under § 1365(d). We remand to the district court to allow it to determine whether an award to Dill, as a prevailing party, is appropriate under § 1365(d). We also remand to the district court to allow it to determine whether attorney's fees are recoverable for work done in connection with the suit in the D.C. district court.

**REVERSED** and **REMANDED**. Costs on appeal to Dill.

TALLMAN, Circuit Judge, Concurring:

I write separately for two reasons. First, we do not today determine whether the facts of this case constitute the requi-

site "special circumstances." This question remains in the discretion of the district judge on remand. As we have explained, we employ "a two-pronged test to determine whether special circumstances exist to justify denying attorney's fees." *Am. Broad. Co. v. Miller*, 550 F.3d 786, 788 (9th Cir. 2008) (per curiam). This test requires a showing whether (1) "awarding the attorney's fees would further the purposes" of the statute, and (2) "the balance of equities favors or disfavors the denial of fees." *Id.* (citing *Mendez v. County of San Bernardino*, 540 F.3d 1109, 1126 (9th Cir. 2008); *Bauer v. Sampson*, 261 F.3d 775, 785-86 (9th Cir. 2001); *Gilbrook v. City of Westminster*, 177 F.3d 839, 878 (9th Cir. 1999)). It is important that the district judge make findings of fact and conclusions of law showing what special circumstances exist in the case, and I emphasize that the standard of review for an award under this doctrine remains the traditional abuse of discretion standard. *See id.*; *Jankey v. Poop Deck*, 537 F.3d 1122, 1129 (9th Cir. 2008).

Second, the policy implications of today's holding concern me. Courts should not be interpreting attorney's fee requirements in such a way as to discourage settlement. If today's holding is read too literally, I believe there is a disincentive for parties in environmental litigation to negotiate a settlement.

Gem County was following the EPA's policy that no NPDES permit was required to apply pesticides in a manner consistent with the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA"), 7 U.S.C. §§ 136-136y. Gem County's abatement procedures complied with FIFRA, allowing it to spray for mosquitos potentially carrying the West Nile Virus and other diseases. Yet, Gem County still attempted to address Dill's concerns regarding the effects on St. John's Organic Farm from these abatement methods. As the district court noted, this is not a case where the defendant was required to possess a permit and blatantly failed to comply. Instead, Gem County was caught in a fight between the agen-

cy's policy and Dill's concerns while combating a public health risk. It made the prudent decision to terminate litigation by entering into a settlement agreement to cease its defense of the EPA policy. Continuing in court would have drained the limited resources of both parties, and it was still necessary for Gem County to continue its abatement efforts to reduce mosquito populations.

If our opinion leads ineluctably to the conclusion that no special circumstances can be established under this set of facts, I am not sure why a defendant would not "roll the dice" before a potentially sympathetic jury. This unfortunate result would deter otherwise desirable settlements to avoid costly and uncertain trials. Only time will tell whether the guidance we articulate in this opinion will truly further the congressional aims behind the Clean Water Act's citizen attorney general provision. Congress is, of course, always free to clarify when attorney's fees may appropriately be assessed in these types of cases.