**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

ABRAHAM MOVIDA CARBONELL;
NENA CARBONELL; QUENIE
CARBONELL,
            *Plaintiffs-Appellants,*

v.

IMMIGRATION AND NATURALIZATION
SERVICE; LORI SCIALABBA,
Chairman of the BIA in her
official capacity; JANE ARELLANO,
Acting District Director of the Los
Angeles Office of the INS in her
official capacity; KEVIN R.
ROONEY, Director of the Executive
Office of Immigration Review in
his official capacity; MICHAEL
GARCIA, Commissioner of the INS;
ALBERTO R. GONZALES, Attorney
General, in his official capacity,
            *Defendants-Appellees.*

No. 03-56809

D.C. No.
CV-02-09862-RGK

OPINION

Appeal from the United States District Court
for the Central District of California
R. Gary Klausner, District Judge, Presiding

Argued and Submitted
June 7, 2005—Pasadena, California

Filed November 18, 2005

Before: Donald P. Lay,* Stephen Reinhardt, and
Sidney R. Thomas, Circuit Judges.

*The Honorable Donald P. Lay, Senior United States Circuit Judge for
the Eighth Circuit, sitting by designation.

15427

Opinion by Judge Reinhardt

**COUNSEL**

Peter R. Afrasiabi, Esq., Turner Green Afrasiabi & Arledge, Attorney for the appellants.

Frank Travieso, Assistant United States Attorney, Los Angeles, California, for the appellees.

## OPINION

REINHARDT, Circuit Judge:

Abraham Carbonell appeals the district court's denial of his petition for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(A) (2005). Carbonell contends that he qualifies as a "prevailing party" under EAJA because he obtained a court order incorporating a voluntary stipulation which awarded him a substantial portion of the relief he sought. We conclude that the court order materially altered the relationship between Carbonell and the government and that this alteration was judicially sanctioned. We therefore hold that Carbonell is a prevailing party and remand the case to the district court for further proceedings.

## I.  Background

Carbonell, a native and citizen of the Philippines, entered the United States in 1990 on a visitor's visa. In 1994, after being served with an Order to Show Cause and after several continuances that allowed him time to find counsel, Carbonell appeared in immigration court with an attorney, at which point he conceded removability and applied for asylum. The immigration judge ("IJ") set a hearing date, which was subsequently rescheduled. According to Carbonell, his attorney was notified of the change in date but never informed him. Neither Carbonell nor his attorney attended the rescheduled hearing, and the IJ consequently issued an *in absentia* order of deportation, of which Carbonell was unaware. Soon thereafter, Carbonell applied for and secured an H1B visa. When the visa expired in 1998, he attempted to renew it, under the mistaken belief that he was still lawfully in the United States. It was then that he was informed of the *in absentia* order of deportation.

In June 1998, Carbonell hired a new attorney and filed a motion to reopen based on a claim of ineffective assistance of

counsel. Three months later, the motion to reopen was denied and Carbonell appealed to the Board of Immigration Appeals ("BIA"). While the appeal was pending, Carbonell applied for adjustment of status as a derivative beneficiary of his wife and daughter's approved petition for residency. On June 24, 2002, Carbonell attended the hearing regarding his adjustment of status application, at which point the Immigration and Naturalization Service ("INS")[1] arrested him and denied him adjustment of status because of the *in absentia* deportation order. He was detained in a federal facility, where he remained for the next 10-and-a-half months. On June 28, 2002, after his appeal had been pending for over three years, the BIA affirmed the IJ's denial of Carbonell's motion to reopen. Carbonell then filed a motion to reconsider and a request for a stay of deportation with the BIA. Without ruling on the motion to reconsider, the BIA denied Carbonell's request for a stay in a cursory, boilerplate decision.

Held in detention and faced with an enforceable order of deportation, Carbonell appealed to this court. Under 8 C.F.R. § 1003.4, had the INS deported Carbonell prior to deciding the motion to reconsider, the BIA would have dismissed his case and he would have had no further recourse. We granted the INS's motion to dismiss for lack of jurisdiction, on the ground that the BIA's denial of a request for stay of deportation was not a final, appealable order. However, we issued a temporary stay of deportation to remain in effect until the issuance of the mandate. While Carbonell's petition was still pending before this court, the INS informed him that "as soon as the stay issued by the Ninth Circuit [was] dismissed, [he] would be placed on the next available flight to the Philippines regardless of the pending motion before the BIA." The INS secured a travel document from the Philippines Consulate General for deportation, although the BIA had still not ruled

---

[1] We refer to the agency as the INS because that was its name at the time of the litigation.

on the motion to reconsider the denial of the motion to reopen.

In December 2002, Carbonell filed a complaint and petition for writ of habeas corpus in the district court. He sought to compel the BIA to rule on his motion to reconsider, and to stay deportation until it did so. Carbonell's counsel attempted to reach an agreement with the government, but it refused to stipulate to a stay of deportation. Carbonell then requested a temporary restraining order from the district court. In response, the INS stated that it would not attempt to deport Carbonell until the mandate in Carbonell's initial appeal issued from this court. The district court denied Carbonell's request for a temporary restraining order on that basis, reasoning that Carbonell could file for a temporary restraining order once the mandate issued or seven days before the deportation, whichever came first.

Carbonell then asked the INS to give him seven days notice before the date on which the INS intended to deport him, so that he could file for a temporary restraining order once this court's mandate had issued, but the INS refused to do so. Consequently, Carbonell requested a temporary restraining order for a second time. The INS explained in response that it would take a minimum of thirty days from the date that the mandate issued for the INS to deport Carbonell. The district court denied Carbonell's second request for a temporary restraining order on that basis, but stated that Carbonell could renew his request once the mandate issued.

The INS subsequently moved to dismiss Carbonell's claims before the district court. The district court denied the motion, explaining that it had jurisdiction to hear Carbonell's habeas claim and that based on the alleged facts, Carbonell had stated claims under the Administrative Procedure Act, the Mandamus Act, and *Bivens*. The court noted that it was "completely disingenuous" for the INS to assert that Carbonell had no

habeas claim when it was holding him in custody while the BIA failed to rule on his motion to reconsider.

Nearly a week after the district court denied the government's motion to dismiss, the mandate in Carbonell's appeal to this court issued. About one week later, Carbonell requested a temporary restraining order for the third time. Within two weeks, the INS and Carbonell stipulated to a stay of deportation until the BIA ruled on his motion to reconsider, and the court incorporated the stipulation into an order. Less than a month afterwards, the BIA granted Carbonell's motion to reconsider and allowed him to reopen his case on the basis of ineffective assistance of counsel in order to pursue adjustment of status. He was then released from jail. Soon afterwards, Carbonell gave notice to the district court of the BIA's ruling. He subsequently requested that the district court dismiss the action, and the court did so.

Carbonell then moved for attorney's fees and costs under the Equal Access to Justice Act ("EAJA"). The district court denied the motion, on the ground that Carbonell was not a "prevailing party" under EAJA. Carbonell appeals.

## II.   Standard of Review

We review a district court's denial of attorney's fees and costs under EAJA for an abuse of discretion. *Akopyan v. Barnhart*, 296 F.3d 852, 856 (9th Cir. 2002). A district court abuses its discretion if its ruling on a fee motion is based on an inaccurate view of the law or a clearly erroneous finding of fact. *Barrios v. Cal. Interscholastic Fed'n*, 277 F.3d 1128, 1133 (9th Cir. 2002). Any elements of legal analysis and statutory interpretation underlying the district court's attorney's fees decision are reviewed *de novo*. *Id*. Factual findings underlying the district court's decision are reviewed for clear error. *Id*.

## III.   Discussion

**[1]** Under the "American rule," litigants ordinarily are required to bear the expenses of their litigation unless a statute or private agreement provides otherwise. Congress has authorized fee recovery by prevailing parties in EAJA. Under EAJA, a litigant is entitled to attorney's fees and costs if: (1) he is the prevailing party; (2) the government fails to show that its position was substantially justified or that special circumstances make an award unjust; and (3) the requested fees and costs are reasonable. *Perez-Arellano v. Smith*, 279 F.3d 791, 793 (9th Cir. 2002) (citing 28 U.S.C. § 2412(d)(1)(A) (2005)).

**[2]** The first question that must be resolved, therefore, is whether Carbonell is a "prevailing party." In *Buckhannon Bd. & Care Home, Inc. v. West Virginia Dep't of Health & Human Res.*, 532 U.S. 598 (2001), the Supreme Court clarified who constitutes a prevailing party for the purpose of awarding attorney's fees. According to *Buckhannon,* a litigant must meet two criteria to qualify as a prevailing party. First, he must achieve a "material alteration of the legal relationship of the parties." Second, that alteration must be "judicially sanctioned." *Id.* at 604-05; *Labotest, Inc. v. Bonta*, 297 F.3d 892, 895 (9th Cir. 2002) ("[T]he *Buckhannon* Court announced that recovery of attorney's fees requires a 'court-ordered change in the legal relationship between' the parties, in which the legal change that the plaintiff claims to have caused is 'judicially sanctioned.' " (internal alterations omitted)); *see also Shapiro v. Paradise Valley Unified Sch. Dist. No. 69*, 374 F.3d 857, 865 (9th Cir. 2004) ("[E]ssentially, in order to be considered a 'prevailing party' after *Buckhannon*, a plaintiff must not only achieve some material alteration of the legal relationship of the parties, but that change must also be judicially sanctioned." (internal quotations and citations omitted)). On the basis of these criteria, the Court rejected the "catalyst theory" for the recovery of attorney's fees, holding that relief achieved through voluntary change prompted by a

lawsuit "lacks the necessary judicial *imprimatur*" for a plaintiff to qualify as a prevailing party. *Buckhannon*, 532 U.S. at 605.[2]

**[3]** The district court held that *Buckhannon* imposes an additional requirement on plaintiffs seeking attorney's fees, stating that in order to be considered a prevailing party, a litigant must achieve an "enforceable judgment[ ] on the merits" or a "court-ordered consent decree[ ]." Although the Supreme Court did mention these two types of relief as illustrative of the "material alteration of the legal relationship of the parties necessary to permit an award of attorney's fees," *Buckhannon*, 532 U.S. at 604, it did so simply by way of offering "examples" of the forms of judicial action that could render a litigant a prevailing party and, thereby, made it clear that litigants could also qualify for prevailing party status if they achieved other types of relief. *Id.* ("We think, however, the 'catalyst theory' falls on the other side of the line from these *examples* [of judgments on the merits and consent decrees]." (emphasis added)). Applying the standard articulated by the Supreme Court, we have rejected overly narrow interpretations of *Buckhannon* and held on a number of occasions that "[j]udgments and consent decrees are examples . . . but they are not the only examples" of judicial action sufficient to convey prevailing party status. *Watson v. County of Riverside*, 300 F.3d 1092, 1096 (9th Cir. 2002); *see also Tipton-Whittingham v. City of L.A.*, 316 F.3d 1058, 1062 (9th Cir. 2003) (characterizing the examples of judgments on the merits and consent decrees as "illustrative, not exhaustive" of the types of relief that give rise to prevailing party status). As a result, we have recognized that litigants who achieve relief other than a judgment on the merits or a consent decree are prevailing parties. For instance, we have held that a litigant "prevailed" and awarded him attorney's fees when he won a

---

[2]Although *Buckhannon* concerned different fee-shifting provisions from those in this case, we applied its interpretation of the term "prevailing party" to the EAJA in *Perez-Arellano*, 279 F.3d at 794-95.

preliminary injunction. *See Watson*, 300 F.3d at 1096. We have also found that a litigant prevailed when he entered into a legally enforceable settlement agreement. *See Richard S. v. Dep't of Developmental Servs.*, 317 F.3d 1080, 1086 (9th Cir. 2003); *see also Barrios*, 277 F.3d at 1134.[3]

In recognizing that a litigant can "prevail" for the purposes of awarding attorney's fees as a result of judicial action other than a judgment on the merits or a consent decree (provided that such action has sufficient "judicial imprimatur"), this court is in agreement with the vast majority of other circuits that have considered this issue since *Buckhannon. See, e.g., Pres. Coal. v. Fed. Transit Admin.*, 356 F.3d 444, 452 (2d Cir. 2004) ("*Buckhannon* does not limit fee awards to enforceable judgments on the merits or to consent decrees."); *T.D. v. LaGrange Sch. Dist. No. 102*, 349 F.3d 469, 478 (7th Cir. 2003) ("*Buckhannon* held that to be a 'prevailing party' a litigant must have obtained a judgment on the merits, a consent decree, or some similar form of judicially sanctioned relief."); *Truesdell v. Phila. Hous. Auth.*, 290 F.3d 159, 165 (3d Cir. 2002) ("We do not agree with the District Court's conclusion that the parties' *settlement* was an inappropriate basis for an award of attorney's fees."); *Am. Disability Ass'n, Inc. v. Chmielarz*, 289 F.3d 1315, 1319 (11th Cir. 2002) ("[T]he district court interpreted *Buckhannon* to stand for the proposition that a plaintiff could be a 'prevailing party' *only* if it achieved one of those two results. That reading of *Buckhannon*, however, is overly narrow."); *Smyth v. Rivero*, 282 F.3d 268, 281 (4th Cir. 2002) ("We doubt that the Supreme Court's guidance in *Buckhannon* was intended to be interpreted so restric-

---

[3]In *Perez-Arellano*, the first case in this court to apply *Buckhannon* to EAJA, there was no settlement agreement to be enforced. As a result, we did not fully consider in that case the different types of relief in addition to judgments on the merits and consent decrees that, if obtained, would qualify a litigant as a prevailing party under the *Buckhannon* Court's criteria. *Perez-Arellano*, 279 F.3d at 795 n.5 (citing *Barrios*, 277 F.3d 1128).

tively as to require that the words 'consent decree' be used explicitly.").

**[4]** Therefore, although Carbonell obtained relief that was not an enforceable judgment on the merits or a consent decree, he nonetheless can qualify as a prevailing party — and he does so under the two-part test set forth by the Supreme Court in *Buckhannon* as elaborated on by this court in subsequent cases.

**[5]** Carbonell satisfies the first prong of the prevailing party test, which requires a material alteration in the legal relationship between the parties, as a result of the parties' stipulation to a stay of departure. The case before the district court primarily concerned whether Carbonell was entitled to a stay of deportation until the BIA reconsidered the question whether his due process rights had been violated, thus requiring that his case be reopened. Before the district court issued its order which incorporated the stay of deportation, the INS had the authority to deport Carbonell immediately. Had the INS done so prior to the BIA's deciding his motion to reopen his case, the BIA would have dismissed his case and Carbonell would have had no further recourse.[4] Under the stipulation, however, the government was required to refrain from deporting Carbonell for 45 days pending the BIA's decision on his motion to reopen. The stipulation for the stay of deportation thus "materially altered the legal relationship between the parties, because the defendants were required to do something directly benefitting the plaintiff[ ] that they otherwise would not have had to do." *Richard S.*, 317 F.3d at 1087; *see also Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1118 (9th Cir. 2000) ("[T]he legal relationship is altered because the plaintiff can force the

---

[4]Under 8 C.F.R. § 1003.4, when "a person who is the subject of deportation proceedings" departs "subsequent to the taking of an appeal, but prior to a decision thereon," his departure "shall constitute a withdrawal of the appeal, and the initial decision in the case shall be final to the same extent as though no appeal had been taken."

defendant to do something he otherwise would not have to do.").

**[6]** For the purposes of the material alteration inquiry, it is of no significance that Carbonell was, as the district court pointed out, "still under [a] final order of deportation." We have held that a litigant can be a prevailing party even if he has not obtained affirmative relief in his underlying action. In *Rueda-Menicucci v. INS*, for instance, we rejected the INS's argument that petitioners cannot be prevailing parties within the meaning of EAJA until they obtain affirmative relief on the merits of their underlying claims. 132 F.3d 493, 495 (9th Cir. 1997) (holding that a petitioner who wins a remand can prevail even if he does not ultimately succeed with his claim before the agency). Similarly, in *Williams v. Alioto*, we held that a plaintiff who obtains a preliminary injunction is a prevailing party even if the underlying case becomes moot because that development "does not affect the fact that for the pertinent time period appellees obtained the desired relief." 625 F.2d 845, 847-48 (9th Cir. 1980), *cited with approval in Richard S.*, 317 F.3d at 1089. Here, too, for the pertinent period of time, the petitioner obtained the desired relief. In the instant case, it is irrelevant that Carbonell's underlying ineffective assistance claim was not resolved, and that he, therefore, remained under a final order of deportation. Under the stipulation for a stay, Carbonell received much of the relief he sought in the district court and thus met the first requirement to be deemed a prevailing party.[5]

---

[5]It is also irrelevant that Carbonell did not receive *all* the relief he sought from the district court. A party need not succeed on every claim in order to prevail. Rather, a plaintiff prevails if he "has succeeded on any significant issue in litigation which achieved some of the benefit [he] sought in bringing suit." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 791-92 (1989) (internal quotations omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Hanrahan v. Hampton*, 446 U.S. 754, 757-58 (1980); *Me. Sch. Admin. Dist. No. 35 v. R.*, 321 F.3d 9, 15 (1st Cir. 2003) (citing *Buckhannon*, 532 U.S. at 603 ("[A] party may be considered 'prevailing' even without obtaining a favorable final judg-

**[7]** Carbonell also satisfies the second prong of the test for determining whether a litigant is a prevailing party, which requires that the material alteration in the relationship between the parties be stamped with some "judicial imprimatur." Although the stay of deportation was obtained through a voluntary stipulation between Carbonell and the government, the district court subsequently incorporated the stipulation into an order that it issued. As we held in *Labotest*, when "the district court [has] placed its stamp of approval on the relief obtained," that relief has "the necessary judicial imprimatur to qualify a plaintiff as a prevailing party." 297 F.3d at 895. In *Labotest*, as here, the district court incorporated a voluntary stipulation agreed to by the parties into an order. We held that "[t]he degree of judicial involvement . . . [was] sufficient to satisfy the requisite quantum envisioned by *Buckhannon*." *Id.* Rejecting the argument that Labotest was "a mere catalyst," we concluded that "a plaintiff who succeeds in obtaining a court order incorporating an agreement that includes relief the plaintiff sought in the lawsuit . . . is a prevailing party for attorney's fees purposes." *Id.* at 893.

*Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375 (1994), *cited with approval in Buckhannon*, 532 U.S. at 604 n.7, is instructive on how a court order incorporating a voluntary stipulation differs from a purely private settlement for the purposes of determining whether a litigant is a prevailing party. In *Kokkonen*, the parties reached a settlement agreement and then prepared a Stipulation and Order of Dismissal with Prejudice, which the judge signed. The Stipulation and Order did not refer to the settlement agreement at all. One of the parties subsequently sought to have the district court

---

ment on all (or even the most crucial) of her claims.")). Although the order that Carbonell obtained did not address all of his claims (including his demand that the agency expeditiously decide his motion or that the agency reopen his case), achieving a stay of deportation was the primary purpose of his petition before the district court. His success in achieving that objective was sufficient to confer prevailing party status on him.

enforce the agreement. The Supreme Court held that the district court did not have the power to do so, but noted that the situation would have been different had the agreement been made part of the order dismissing the case. In that situation, the Court stated, a breach of the agreement would have also been a breach of the order, and the court could then have properly exercised its power to enforce the order. *Id.* at 381.

**[8]** In considering whether a particular judicial action is stamped with the necessary judicial imprimatur to convey prevailing party status on its beneficiary, the Fourth Circuit, reaching the same result we reached in *Labotest*, drew upon the reasoning of *Kokkonen*. It borrowed *Kokkonen*'s rationale in distinguishing between purely private settlements and voluntary settlements which are incorporated into court orders. The Fourth Circuit noted that "[a] court's responsibility to ensure that its orders are fair and lawful stamps an agreement that is made part of an order with judicial imprimatur." *Smyth*, 282 F.3d at 282, *cited with approval in Roberson v. Giuliani*, 346 F.3d 75, 83 (2d Cir. 2003). Similarly, the Eleventh Circuit, also drawing on the lessons of *Kokkonen*, stated that when a court incorporates the terms of a voluntary settlement into an order, "it may thereafter enforce the terms of the parties' agreement. Its authority to do so clearly establishes a 'judicially sanctioned change in the legal relationship of the parties,' as required by *Buckhannon*, because the plaintiff thereafter may return to court to have the settlement enforced." *Am. Disability Ass'n*, 289 F.3d at 1320. We agree with the Second, Fourth, and Eleventh Circuits' application of *Kokkonen* to this context and, as in *Labotest*, hold that when a court incorporates the terms of a voluntary agreement into an order, that order is stamped with sufficient "judicial imprimatur" for the litigant to qualify as a prevailing party for the purpose of awarding attorney's fees.

**[9]** Here, the district court's order incorporating the voluntary stipulation to a stay of departure clearly meets the "judicial sanction" prong of the prevailing party test. As in

*Labotest*, the district court incorporated an agreement reached by the parties into an order. Thus, had the government violated the agreement and attempted to deport Carbonell during the relevant time period, he could have returned to the district court to enforce the agreement. The order fundamentally differed from a private settlement agreement, such as the one at issue in *Kokkonen* which the Court in *Buckhannon* cited as lacking the necessary judicial sanction to support an award of attorney's fees. Here, by incorporating the voluntary stipulation into its order, the district court stamped it with the requisite "judicial imprimatur."

## IV.  Conclusion

[10] For the reasons stated above, we conclude that the district court's order incorporating the voluntary stipulation to a stay of departure materially altered the relationship between Carbonell and the government and that this alteration was judicially sanctioned. As a result, we hold that Carbonell is a prevailing party for the purpose of awarding attorney's fees under EAJA. Because the district court erroneously concluded that Carbonell was not a prevailing party, it did not consider the parties' other arguments regarding whether the government's position was substantially justified. We therefore remand the case to the district court to consider those and any other remaining issues.

**Vacated and Remanded**.