**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LA ASOCIACION DE TRABAJADORES
DE LAKE FOREST,
              *Plaintiff-Appellant,*

       and

NATIONAL DAY LABORER
ORGANIZING NETWORK,
              *Plaintiff-Appellant,*

       v.

CITY OF LAKE FOREST,

                    *Defendant,*

       and

DON BARNES, City of Lake
Forest's Chief of Police Services,
in his individual and official
capacities; CHRIS THOMPSON,
Orange County Sheriff's
Department law enforcement
officer, in his individual and
official capacities,
              *Defendants-Appellees.*

No. 08-56564

D.C. No.
8:07-cv-00250-
DOC-AN

17451

LA ASOCIACION DE TRABAJADORES
DE LAKE FOREST; NATIONAL DAY
LABORER ORGANIZING NETWORK,
            *Plaintiffs-Appellants,*

                v.

CITY OF LAKE FOREST,
                        *Defendant,*

            and

COUNTY OF ORANGE; JAY LEFLORE,
City of Lake Forest's Chief of
Police Services, in his individual
and official capacities; CHRIS
THOMPSON, Orange County
Sheriff's Department law
enforcement officer, in his
individual and official capacities;
DON BARNES, City of Lake
Forest's Chief of Police Services,
in his individual and official
capacities,
            *Defendants-Appellees.*

No. 09-55215

D.C. No.
8:07-cv-00250-
DOC-AN

OPINION

Appeal from the United States District Court
for the Central District of California
David O. Carter, District Judge, Presiding

Argued and Submitted
June 8, 2010—Pasadena, California

Filed October 22, 2010

Before: Alex Kozinski, Chief Judge, Johnnie B. Rawlinson, Circuit Judge, and Algenon L. Marbley, District Judge.*

Opinion by Judge Marbley

---

*The Honorable Algenon L. Marbley, United States District Judge for the Southern District of Ohio, sitting by designation.

## COUNSEL

Hector O. Villagra (argued) and Belinda Escobosa Helzer (argued), ACLU Foundation of Southern California, Orange, California; and Mark D. Rosenbaum and Peter J. Eliasberg, ACLU Foundation of Southern California, Los Angeles, California, for the appellants.

S. Frank Harrell (argued) and Pancy Lin, Lynberg & Watkins, Orange, California, for the appellees.

## OPINION

MARBLEY, District Judge.

This appeal arises from a dispute between a nonprofit organization advocating on behalf of day laborers and local government officials over the enforcement of restrictions on soliciting work on public sidewalks. The district court held that plaintiffs lacked standing and were not entitled to attorney's fees. We agree with the district court's standing conclusion, but disagree with its resolution of the attorney's fees issue. We therefore **AFFIRM** in part, **REVERSE** in part, and **REMAND** for further proceedings consistent with this opinion.

## I. BACKGROUND

### A. THE PARTIES

Plaintiff National Day Laborer Organizing Network ("NDLON") is a nonprofit association consisting of a nation-

wide coalition of day laborers and agencies working with day laborers to protect their ability to seek employment. NDLON's mission encompasses six broad program areas: (1) promoting worker centers as the preferred public policy for responding to day laborer concerns; (2) developing educational materials and organizing materials for member organizations; (3) helping day laborers defend their wage and hour rates; (4) helping them defend their civil rights; (5) working in partnerships with national organizations to effectuate comprehensive immigration reform; and (6) working on gender equity among member organizations. NDLON's office is located in Los Angeles County.

Plaintiff La Asociación de Trabajadores de Lake Forest ("ATLF") is an unincorporated association of day laborers regularly seeking work on public sidewalks in Lake Forest. ATLF was formed in January 2007, in response to alleged harassment by police officers. ATLF members have a common interest in learning about their rights and responsibilities, and addressing issues such as police enforcement, community relations, and wage and hour claims. Groups of ATLF members meet at least once a week, and all of the members meet together occasionally to make decisions or plan activities.

Plaintiff Colectivo Tonantzin ("Colectivo") is an unincorporated organization that was formed in July 2004 to protect the interests of immigrant workers and their families in Orange County. Colectivo works to ensure that workers and their families receive equal protection under the law. The organization engages in activities such as planning marches, educating members and the public about relevant issues, and working in gardens to produce food and to provide education regarding food production and consumption. Colectivo members often visit the sidewalks where ATLF members seek employment to provide support, counseling, and education.

Defendants include Orange County; the City of Lake Forest; Jay LeFlore, the City of Lake Forest's Chief of Police

Services, in his official and individual capacities; Don Barnes, the City of Lake Forest's Chief of Police Services, in his official and individual capacities; and Chris Thompson, an Orange County Sheriff's Department law enforcement officer, in his official and individual capacities.[1]

## B. FACTUAL BACKGROUND

ATLF alleges that, in January 2007, Orange County Sheriff's Department ("OCSD") deputies "ran all the day laborers looking for work off the public sidewalks" at three intersections in Lake Forest. Two OCSD deputies informed day laborers that they could not remain on the public sidewalk at one of the intersections. The day laborers staged a protest on January 20, 2007. An OCSD deputy told them that month that it was illegal for them to be hired, and that if they did find employment while on public property, deputies would pull them out of the employers' cars.

In February 2007, ATLF members called NDLON's office to complain about the harassment. In response, Veronica Federovsky, NDLON's West Coast Field Coordinator, began meeting approximately once a week with ATLF members in Lake Forest, despite the fact that ATLF is not one of NDLON's member organizations. Federovsky's regular job duties include providing technical support and training to member organizations, helping them establish and operate worker centers, assisting with local campaigns affecting day laborers, and strengthening the organizational network on the west coast. Due to the alleged harassment of ATLF members in Lake Forest, Federovsky diverted approximately 20% of the time and resources she would usually spend performing her regular job duties to assisting ATLF members.

---

[1]The original Complaint named several more defendants, including the Mayor of Lake Forest, among others, but only five defendants remain at this point. Claims against all other defendants were voluntarily dismissed.

Almost every week, Federovsky would drive approximately 60 miles from her home in North Hollywood to Lake Forest to meet with ATLF members, a drive that took between one and a half and two hours. She spent two and a half to three hours meeting with ATLF members, and then drove approximately 50 miles back to NDLON's office in Los Angeles. The assistance she provided to ATLF members included planning and participating in "know your rights" presentations and copying and distributing literature for those presentations. According to Chris Newman, the Legal Programs Director of NDLON, the loss of staff pay, time, and expenses has "detracted from [NDLON's] ability to serve [its] member organizations and reduced the resources available to conduct [NDLON's] ordinary activities." NDLON nonetheless chose to continue assisting ATLF members because it feared that the practices allegedly engaged in by Lake Forest police officers would spread to other areas and begin affecting NDLON's actual member organizations.

Plaintiffs filed their original Complaint on March 1, 2007, seeking to block the enforcement of Section 5.06.020 of the Lake Forest Municipal Code ("the Ordinance"). Lake Forest then repealed the Ordinance, effective April 3, 2007, and Plaintiffs filed a First Amended Complaint on April 19, 2007. The district court granted them leave further to amend the Complaint on June 19, 2007, and on November 27, 2007.

In late April 2007, after the Ordinance had been repealed, OCSD deputies allegedly continued to harass day laborers. Around that time, one deputy told a group of day laborers that they could not look for work on public sidewalks and made them leave. When an employer parked legally next to a group of day laborers, a deputy told the employer he could not hire the laborers and made the laborers leave. Plaintiffs alleged that numerous other incidents of such harassment occurred in 2007 and 2008.

In late July 2008, Plaintiffs stipulated to the dismissal of their claims against all Defendants except Sandra Hutchens, Don Barnes, Jay LeFlore, and Chris Thompson. At the pretrial conference, held August 11, 2008, Defendants raised the issue of standing for the first time. The district court ordered Defendants to submit a brief on the standing issue by August 12, 2008, and Plaintiffs to respond by August 15, 2008. On August 18, 2008, the district court held a hearing on the standing issue, at which it converted the Defendants' brief into a motion for summary judgment, and granted that motion pursuant to a tentative order the court had provided to the parties.[2] As a result of that decision, Plaintiffs NDLON and Colectivo were dismissed from the case for lack of standing. The remaining parties then agreed that a jury was not necessary, as the only remaining issue involved injunctive relief. Later that day, ATLF and the Defendants reached a settlement.

On September 17, 2008, NDLON appealed the district court's standing order. On November 14, 2008, pursuant to the settlement agreement, ATLF filed a motion for attorney's fees.[3] The district court denied that motion on January 28, 2009. On February 10, 2009, ATLF appealed the denial of attorney's fees.

## II.   JURISDICTION

The district court below had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. NDLON filed a timely interlocutory appeal of the district court's order on standing on September 17, 2008. The order on standing became appealable when the district court entered its subsequent order fully

---

[2]Plaintiffs' counsel did not receive the tentative order until the morning of the hearing, and was given a short time to review it before argument.

[3]While the Settlement Agreement stated that the parties disagreed as to reasonable attorney's fees and costs, it provided Plaintiffs with 90 days to file a motion for such fees and costs.

adjudicating the remaining issues. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 892, 897 (9th Cir. 2001) ("An interlocutory order becomes appealable when final judgment is entered."). The district court denied ATLF's motion for attorney's fees on January 28, 2009. That order is appealable under 28 U.S.C. § 1291.

## III. ANALYSIS

## A. NDLON'S ORGANIZATIONAL STANDING

### 1. Standard of Review

A district court's decision regarding standing is reviewed de novo. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 902 (9th Cir. 2002). Likewise, we review a district court's grant of summary judgment de novo. *Oliver v. Keller*, 289 F.3d 623, 626 (9th Cir. 2002).

### 2. Analysis

**[1]** The standing doctrine limits federal court jurisdiction. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). It is well established that the "irreducible constitutional minimum of standing" consists of these three elements: (1) injury in fact; (2) causation; and (3) redressability. *Id.* at 560-61. While the *Lujan* decision established the "irreducible constitutional minimum" test for standing in the context of an individual plaintiff, the same analysis is used to determine whether an organizational plaintiff has standing in a particular case. *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 378 (1982) ("In determining whether HOME has standing under the Fair Housing Act, we conduct the same inquiry as in the case of an individual.").

**[2]** An organization suing on its own behalf can establish an injury when it suffered "both a diversion of its resources and a frustration of its mission." *Combs*, 285 F.3d at 905. It

cannot manufacture the injury by incurring litigation costs or simply choosing to spend money fixing a problem that otherwise would not affect the organization at all. *See, e.g.*, *Fair Employment Council v. BMC Mktg. Corp.*, 28 F.3d 1268, 1276-77 (D.C. Cir. 1994). It must instead show that it would have suffered some other injury if it had not diverted resources to counteracting the problem. In *Havens*, for example, housing discrimination threatened to make it more difficult for HOME to counsel people on where they might live if the organization didn't spend money fighting it. 455 U.S. at 379. The organization could not avoid suffering one injury or the other, and therefore had standing to sue. *Cf. Smith v. Pacific Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (organization "had . . . to divert its scarce resources from other efforts"); *El Rescate Legal Servs., Inc. v. Exec. Office of Immigration Rev.*, 959 F.2d 742, 748 (9th Cir. 1992) (challenged policy "require[d] the organizations to expend resources . . . they otherwise would spend in other ways").

**[3]** In this case, NDLON failed to assert any factual allegations in its complaint that it was forced to divert resources to help ATLF because of the defendants' actions, and never sought leave to add them.[4] NDLON appeared to assert claims against the defendants in the form of Declarations submitted by Veronica Federovsky and Chris Newman, which were proffered in conjunction with NDLON's response to Defendants' motion for summary judgment. What NDLON failed to do, however, was to assert any factual allegations regarding organizational standing in its complaint. "Ordinarily, a plaintiff opposing a motion for summary judgment on [a standing] issue would have to support, with affidavits or other evidence,

---

[4]An organization may sue only if it was forced to choose between suffering an injury and diverting resources to counteract the injury. *See BMC Marketing Corp.*, 28 F.3d at 1277 (rejecting the idea that a plaintiff organization has standing to sue based solely on its own decision regarding resources allocation, and requiring that the plaintiff be forced to divert resources in order to avoid an injury caused by defendant's conduct).

the factual allegations underlying the assertion of standing because such allegations must ultimately be proven for a plaintiff to prevail." *Fernandez v. Brock*, 840 F.2d 622, 625-26 (9th Cir. 1988) (citing *Gladstone Realtors v. Village of Bellwood*, 441 U.S. 91, 115 & n. 31 (1979)). Without making any attempt to allege organizational standing in its complaint, NDLON's provision of affidavits and declarations supporting organizational standing at the summary judgment stage is ineffectual.

It appears as though at the time NDLON filed its complaints (up to and including its Third Amended Complaint), the organization intended to assert standing on behalf of its members rather than on behalf of itself as an organization. Various paragraphs in the complaint refer to NDLON's members and the alleged violations of their First Amendment rights. Nowhere in the complaint, however, does NDLON assert a frustration of its purpose or diversion of its resources that would allow the Court to conclude that NDLON had pleaded organizational standing on its own behalf. By contrast, Colectivo did make such allegations, stating "Defendants' chilling actions challenged in this case frustrate the Colectivo's mission and prompt the diversion of its limited resources to organize, educate, and otherwise assist the day laborers in Lake Forest."

**[4]** Given its inadequate pleading regarding organizational standing, NDLON may not effectively amend its Complaint by raising a new theory of standing in its response to a motion for summary judgment. *See Wasco Prods., Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 992 (9th Cir. 2006) ("Simply put, summary judgment is not a procedural second chance to flesh out inadequate pleadings." (Internal quotation marks omitted). We therefore affirm the district court's decision that NDLON lacks standing to pursue its claims.

## B.   ATTORNEY'S FEES

### 1.   Standard of Review

We review a district court's decision to deny attorney's fees for an abuse of discretion. *Labotest, Inc. v. Bonta*, 297 F.3d 892, 894 (9th Cir. 2002). In conducting that analysis, "[e]lements of legal analysis and statutory interpretation that figure into the district court's attorney's fees decision are reviewed de novo," and "[f]actual findings underlying the district court's decision are reviewed for clear error." *Richard S. v. Dep't of Dev. Servs.*, 317 F.3d 1080, 1086 (9th Cir. 2003). We review a district court's determination regarding "prevailing party" status de novo, as "[t]he question of whether a judgment has materially altered the legal relationship of the parties is a legal one." *V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1232-33 (9th Cir. 2007).

### 2.   Analysis

**[5]** A court may award a reasonable attorney's fee to a party that prevails under § 1983. *See* 42 U.S.C. § 1988(b). Litigation that results in an enforceable settlement agreement can confer "prevailing party" status on a plaintiff. *See, e.g.*, *Carbonell v. I.N.S.*, 429 F.3d 894, 899 (9th Cir. 2005) ("We have . . . found that a litigant prevailed when he entered into a legally enforceable settlement agreement."). In determining whether a settlement agreement confers prevailing party status on a plaintiff, we have used a three-part test, looking at: "(1) judicial enforcement; (2) material alteration of the legal relationship between the parties; and (3) actual relief on the merits of [the plaintiff's] claims." *Saint John's Organic Farm v. Gem County Mosquito Abatement Dist.*, 574 F.3d 1054, 1059 (9th Cir. 2009).

**[6]** There is no doubt here that the settlement agreement at issue here is judicially enforceable: the district court explicitly

retained jurisdiction over the case for five years to enforce the agreement. *See id.* ("The Agreement specifically provided that its terms would be enforceable by the district court."). When "the district court [has] placed its stamp of approval on the relief obtained, that relief has the necessary judicial imprimatur to qualify a plaintiff as a prevailing party." *Carbonell*, 429 F.3d at 901 (alteration in original) (internal quotation marks omitted).

Nor is there any doubt that the legal relationship between the parties was materially altered by the agreement. First, while everything Appellees are required to do as a result of the settlement agreement is couched in terms of existing policies, Appellees were not necessarily subject to the jurisdiction of a federal court for violating those policies until the settlement agreement was signed. *See Saint John's*, 574 F.3d at 1059. ("[E]ven if the Agreement required [the defendant] to do only what it was already doing, it was undisputed that [the defendant's] behavior became legally required rather than voluntary as a result of the Agreement."). Second, ATLF can now simply move to enforce the settlement agreement rather than having to bring a new action to defend its members.

**[7]** Finally, Appellants received "actual relief" on the merits of their claims. To do so, "a plaintiff must receive some actual relief that serves the goals of the claim in his or her complaint." *Id.* While some relief is required, "an extremely small amount of relief is sufficient to confer prevailing party status." *Id.* at 1059-60. Here, Appellants received relief in the form of a judicially enforceable agreement requiring Appellees to adhere to policies respecting day laborers and their First Amendment rights, relief ATLF sought in its complaint. *Cf. Fischer v. SJB-P.D. Inc.*, 214 F.3d 1115, 1120 (9th Cir. 2000) ("According to Fischer's complaint, the goal of his ADA claim was to obtain an injunction that would force the Inn to change its alleged policy and practice of denying access to people who use service dogs. In the end that is exactly what he achieved.").

**[8]** Because ATLF has achieved "prevailing party" status, it is entitled to an award of attorney's fees.

## IV.   CONCLUSION

The district court properly held that NDLON lacked organizational standing to pursue its claims, and its decision in that regard is **AFFIRMED**. The district court erred, however, in denying ATLF's request for attorney's fees. Its decision on the attorney's fees issue is **REVERSED**, and the case is **REMANDED** for further proceedings consistent with this opinion.

Each party shall bear its own costs.