NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

OCT 17 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

SOUTHWEST FAIR HOUSING COUNCIL, an Arizona non-profit corporation,

Plaintiff-Appellee,

v.

WG SCOTTSDALE LLC, AKA Atria Sierra Pointe,

Defendant-Appellant.

No.    22-16345

D.C. No. 4:19-cv-00180-RM

MEMORANDUM*

Appeal from the United States District Court
for the District of Arizona
Rosemary Márquez, District Judge, Presiding

Argued and Submitted September 15, 2023
Arizona State University, Phoenix

Before:  HURWITZ, BUMATAY, and DESAI, Circuit Judges.
Concurrence by Judge BUMATAY.

Southwest Fair Housing Council ("Southwest") sent testers to Atria Sierra

Pointe, an assisted-living community, to determine whether it would provide an

American Sign Language ("ASL") interpreter for a fictional deaf applicant for

residency.  After the facility declined to provide one, Southwest filed this action

_____

        *    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

alleging violations of the federal Fair Housing Act ("FHA"), the Arizona FHA, and the Americans with Disabilities Act ("ADA"). A jury returned a verdict in favor of Southwest, awarding both nominal and punitive damages. The district court then granted a permanent injunction prohibiting further discriminatory activities and requiring Sierra Pointe to contract with ASL interpreters when necessary.

On appeal, Sierra Pointe challenges Southwest's standing to sue, the sufficiency of the evidence to support the verdict, the punitive damages award, and Southwest's standing to seek injunctive relief. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

1. An "organization may establish injury in fact if it can demonstrate: (1) frustration of its organizational mission; and (2) diversion of its resources to combat the particular conduct in question." *Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1154 (9th Cir. 2019) (cleaned up). Sierra Pointe does not contest that Southwest established frustration of its organizational mission. An organization can establish the requisite diversion of resources if it has designed and disseminated literature to redress discrimination uncovered by housing testers, *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 905 (9th Cir. 2002), or diverts staff and resources to educational programs concerning a challenged practice, *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1018 (9th Cir. 2013). Southwest established organizational standing here. In direct response to Sierra Pointe's conduct,

2

Southwest committed resources to training, outreach, and developing printed materials for distribution.

2.    Under the relevant federal and state acts, Southwest had the burden to prove that an accommodation denied to a disabled person was "necessary." 42 U.S.C. §§ 3604(f)(3)(B), 12182(b)(2)(A)(ii); Ariz. Rev. Stat. § 41-1491.19(E)(2). "To prove that an accommodation is necessary, plaintiffs must show that, but for the accommodation, they likely will be denied an equal opportunity to enjoy the housing of their choice." *Giebeler v. M & B Assocs.*, 343 F.3d 1143, 1155 (9th Cir. 2003) (cleaned up). Southwest presented testimony that deaf individuals whose primary or preferred language is ASL often struggle to communicate in other ways. Sierra Pointe's expert conceded that complex conversations are most likely to require an ASL interpreter. The testers made Sierra Pointe aware of the fictional applicant's use of ASL and requested an ASL interpreter for specific needs related to prospective housing at the facility, including the consideration of a proposed lease. Viewing this evidence in the light most favorable to Southwest, *see EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009), a reasonable jury could find that absent an interpreter, the applicant likely would have been denied an equal opportunity to enjoy the facility. *See Giebeler*, 343 F.3d at 1155–56; *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006, 1010–11 (9th Cir. 2017).

3.    Punitive damages may be assessed in an FHA case "when a defendant's

3

conduct . . . involves reckless or callous indifference to the federally protected rights of others." *Fair Hous. of Marin*, 285 F.3d at 906. Southwest presented evidence that Sierra Pointe knew that federal law required the accommodation of deaf residents with ASL interpreters in various situations when necessary, including during lease signings. The company that operated Sierra Pointe had previously been involved in similar litigation, and thus was aware of the requirements of federal law. Substantial evidence thus supports the jury finding that Sierra Pointe's conduct "was malicious, oppressive or in reckless disregard of the plaintiff's rights."

4.      The punitive damages award was not constitutionally excessive. Because the court limited the non-punitive damages award to $1, the ratio between the punitive and compensatory awards is not a reliable measure of excessiveness. *See Arizona v. ASARCO LLC*, 773 F.3d 1050, 1054–60 (9th Cir. 2014) (en banc). And the award was less than the maximum civil penalties for violations of the federal FHA and ADA. *See* 28 C.F.R. § 85.5 (2022); *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 428 (2003).

5.      Southwest demonstrated a sufficient likelihood of future harm to establish standing to seek injunctive relief. The district court correctly found that "[m]ultiple lawsuits have been filed against" Sierra Pointe's operating company "for similar conduct" and that the company had "previously entered a consent decree with another fair housing organizational plaintiff in New York regarding its refusal

to provide ASL interpreters to deaf residents." These facts demonstrate a reasonable likelihood of an "actual and imminent, not conjectural or hypothetical," harm. *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009).

**AFFIRMED.**

FILED

OCT 17 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

While I concur with the majority here, I write to note the entirely convoluted state of organizational standing doctrine in the Ninth Circuit. That doctrine as it stands today has strayed from not only Supreme Court precedent but our own.

Southwest Fair Housing Council, the plaintiff-appellee here, isn't an organization that went about its business and unexpectedly encountered discrimination at the Atria Sierra Pointe apartment building and then mobilized against that discrimination. Instead, Southwest is an organization *already* dedicated to rooting out discrimination in housing. As early as 2015, well before encountering Sierra Pointe, Southwest made the conscious decision to pivot toward confronting disability discrimination. It then devoted resources training its "testers" on hearing discrimination. After it did so, it found what it was looking for. In 2016, it found a building that did less than it was expected to under the Americans with Disabilities Act. It then went about its mission educating its members about disability discrimination in housing. Southwest now claims standing for an organizational injury.

So, in this case, Southwest voluntarily expended resources in line with its mission to combat disability discrimination and then continued to expend resources after it found an instance of that discrimination. Under traditional standing doctrine, Southwest would not have Article III standing. That's because a self-inflicted injury

1

cannot establish standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013) ("[R]espondents cannot manufacture standing merely by inflicting harm on themselves[.]"); *Nat'l Family Plan. and Reprod. Health Ass'n v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) ("We have consistently held that self-inflicted harm doesn't satisfy the basic requirements for standing."); *Pennsylvania v. New Jersey*, 426 U.S. 660, 664 (1976) (per curiam) ("The injuries to the plaintiffs' fiscs were self-inflicted . . . . No state can be heard to complain about damage inflicted by its own hand."). It is no different for organizational standing.

But our precedent has deviated far from traditional standing doctrine when it comes to organizations. To begin, our organizational standing doctrine required that an organization show (1) a "frustration of its organizational mission;" and (2) a "diversion of its resources to combat the [challenged actions]." *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1105 (9th Cir. 2004) (simplified). When it comes to diversion, we've also held that the organization must "show that it would have suffered some other injury if it had not diverted resources to counteracting the problem." *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1088 (9th Cir. 2010). Thus, an "organization may sue only if it was forced to choose between suffering injury and diverting resources to counteract the injury." *Id*. at 1088 n.4 (simplified).

So far so good.  But somewhere, as our precedent developed, critical parts of this test got lost.  While we once required diversion to avoid "some other injury," that requirement has seemingly disappeared from our books.  *See id*. at 1088.  While we once required frustration, we now say spending for education *consistent* with an organization's mission constitutes *frustration* of purpose.  *See, e.g., Fair Hous. Council of San Fernando Valley v. Roommate.com, LLC*, 666 F.3d 1216, 1219, 1224 (9th Cir. 2012) (granting organizational standing for spending on "education and outreach campaigns targeted at discriminatory roommate advertising" as frustrating the organizations' "central mission" even though their mission was "eliminating housing discrimination").  Of course, we've also said that some types of spending for education aren't enough.  *See Rodriguez v. City of San Jose*, 930 F.3d 1123, 1136 (9th Cir. 2019) (denying organizational standing to a group which "advis[ed] and assist[ed] members and non-members in navigating California's gun laws and attempting to recover confiscated firearms").  With any guardrails gone, it's hard to see any discernible limits to organizational standing.  We now leave it to the whims of the panel draw.

Our organizational standing mess has not gone unnoticed.  Several members of our court have criticized it.  *See Sabra v. Maricopa County Cmty. College District*, 44 F.4th 867, 895–96 (9th Cir. 2022) (VanDyke, J., concurring); *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 689–94 (9th Cir. 2021) (Bumatay, J., dissenting

3

from the denial of rehearing en banc); *Roommate.com*, 666 F.3d at 1224–26 (Ikuta, J., concurring).

One fix might be to reinvigorate the requirement that diversion of resources be to avoid "some other injury." *Lake Forest*, 624 F.3d at 1088. To say that *any* voluntary reaction by an organization to an outside actor or force confers organizational standing is far too broad. Self-inflicted injury isn't enough. If *any* diversion of resources is sufficient, then any organization could manufacture standing at will. Take this case. We say that Southwest has standing because it "committed resources to training, outreach, and developing printed materials." But if Southwest doesn't have to establish that these resources were made to *avoid* an injury, it's hard to see how it was traceable to anything that happened at Sierra Pointe. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 376 (1982) (holding that an organization's injury must be "fairly traceable" to the defendants' actions). Combatting disability discrimination is, of course, a noble cause, but the injury Southwest complains of appears to be the kind of self-inflicted harm that Article III standing does not support.

While I'm highly skeptical that Southwest meets organizational standing requirements, I cannot say that our lax precedent precludes it here. I thus reluctantly join the majority in full.

4