**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

DEC 31 2024

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| FREEDOM FOUNDATION, a Washington nonprofit corporation,<br><br>        Plaintiff - Appellant,<br><br>  v.<br><br>INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 117, a nonprofit corporation; INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 763, an unincorporated association; INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 760, an unincorporated association; JAY INSLEE, Governor, State of Washington,<br><br>        Defendants - Appellees. | No. 23-3946<br><br>D.C. No.<br>3:22-cv-05273-DGE<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the Western District of Washington
David G. Estudillo, District Judge, Presiding

Argued and Submitted November 13, 2024
San Francisco, California

---

[*]     This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Before: S.R. THOMAS and MILLER, Circuit Judges, and MOLLOY, District Judge.**
Concurrence by Judge Molloy.

Freedom Foundation, a nonprofit organization that advocates for public employees to refrain from paying union dues, appeals the grant of summary judgment to the defendants on its claims for damages and injunctive relief under 42 U.S.C. § 1983 against three unions that represent public employees in Washington and against Washington Governor Jay Inslee. In Washington, a public employee who has agreed to pay union dues can revoke that authorization only by making a written revocation request to the union. Wash. Rev. Code § 41.56.110(3)(a).

In its claims against the unions, Freedom Foundation argues that the unions violate public employees' First Amendment rights against compelled speech and association by rejecting packages of dues revocation forms that it mails on their behalf. *See Janus v. American Fed'n of State, Cnty., & Mun. Emps., Council 31*, 585 U.S. 878 (2018). In its claim against Governor Inslee, Freedom Foundation brings a facial constitutional challenge to the Washington statute that sets dues authorization and revocation procedures.

The district court held that Freedom Foundation lacks Article III standing and also that its claims against the unions fail on the merits. We have jurisdiction

---

** The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

under 28 U.S.C. § 1291, and we review de novo the district court's grant of summary judgment. *La Asociacion de Trabajadores de Lake Forest v. City of Lake Forest*, 624 F.3d 1083, 1087 (9th Cir. 2010). We affirm.

1. Freedom Foundation has organizational standing to assert its claims against the unions. "[O]rganizations must satisfy the usual standards for injury in fact, causation, and redressability that apply to individuals." *FDA v. Alliance for Hippocratic Med.*, 602 U.S. 367, 393–94 (2024). To demonstrate injury in fact, an organization must "show that a challenged . . . action directly injures the organization's pre-existing core activities and does so *apart* from the plaintiffs' response to that . . . action." *Arizona All. for Retired Americans v. Mayes*, 117 F.4th 1165, 1170 (9th Cir. 2024).

Freedom Foundation has successfully shown injury through declarations which, "for purposes of the summary judgment motion," must "be taken to be true." *Washington Env't Council v. Bellon*, 732 F.3d 1131, 1139 (9th Cir. 2013) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)). Those declarations show that the organization "has dedicated itself to . . . helping interested employees" to "cancel their financial support of unions," including by mailing an average of about 250 revocation forms per week on behalf of employees in more than 20 unions in five States and by maintaining a website that helps employees create and send revocation forms. Helping public employees

3                                    23-3946

revoke their dues authorizations is therefore a core activity of the organization in which it engaged before any of the alleged conduct by the unions. Taking the declarations as true, the unions hinder that core activity by rejecting revocation forms mailed by Freedom Foundation, at a cost of approximately $14 for each rejected form. Those expenditures, necessary to continue a pre-existing core activity, are sufficient injuries in fact. *See Mayes*, 117 F.4th at 1170, 1177.

Freedom Foundation has also shown causation and redressability. If the unions did not refuse the organization's mail, then it would not have to resend the revocation forms. Money damages would remedy the alleged past injury, and the requested injunction would prevent future injury.

Because we conclude that Freedom Foundation has standing to assert its claims against the unions based on the originally submitted appellate record, we deny its motion to supplement the record (Dkt. No. 55).

2. Freedom Foundation's claims against the unions fail for lack of state action. In *Wright v. Service Employees International Union Local 503*, we held that a union's forgery of a public employee's dues authorization was not state action under an Oregon statute nearly identical to the Washington statute at issue here. 48 F.4th 1112, 1116–18, 1121–22 (9th Cir. 2022). A union's refusal to accept delivery of a public employee's dues revocation is not state action either. Freedom Foundation's "alleged constitutional deprivation did not result from 'the exercise

of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible.'" *Id.* at 1122 (quoting *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013)). The unions "further cannot fairly be 'described . . . as . . . state actor[s].'" *Id*. at 1123 (first alteration in original) (quoting *Naoko Ohno*, 723 F.3d at 994). Washington "did not 'affirm[], authorize[], encourage[], or facilitate[] unconstitutional conduct'" by failing to process revocation requests that it may not even have known about. *Id*. (alterations in original) (quoting *Naoko Ohno*, 723 F.3d at 996).

3. Freedom Foundation lacks standing to assert its claim against Governor Inslee. Freedom Foundation argues that it has been injured by the Washington statute because the statute prevents it from associating with public employees for the purpose of expressive activity. But it has not shown that the statute limits any association or expression. Even if the statute did allow unions to reject revocation forms sent by Freedom Foundation, that would not prevent the organization from associating with public employees or from expressing its views on public-sector unions. At most, the statute obstructs the *effects* that Freedom Foundation would like its association and expression to have—namely, to reduce the amount sent to those unions in dues. But "[t]he First Amendment right to associate and to advocate 'provides no guarantee that a speech will persuade or that advocacy will be effective.'" *Smith v. Arkansas State Highway Emp., Loc. 1315*, 441 U.S. 463,

5                                                  23-3946

464–65 (1979) (quoting *Hanover Twp. Fed'n of Tchrs., Loc. 1954 (AFL-CIO) v. Hanover Cmty. Sch. Corp.*, 457 F.2d 456, 461 (7th Cir. 1972)).

**AFFIRMED.**

*Freedom Foundation v. Int'l Brotherhood of Teamsters Local 117*, 23-3946

MOLLOY, District Judge, concurring:

Although I agree with the majority's conclusion that Freedom Foundation's claims against the unions fail for lack of state action, I would affirm the district court's finding that Freedom Foundation lacks organizational standing. *See Ariz. Alliance for Retired Ams. v. Mayes*, 117 F.4th 1165, 1178 (9th Cir. 2024) ("[S]pending money voluntarily in response to a governmental policy cannot be an injury in fact.").